IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2007 Session

# IN RE: ESTATE OF G. WALLACE CRESWELL, ORAL RUTH CRESWELL v. JAMES STEWART CRESWELL

**Direct Appeal from the Probate Court for Blount County**
**No.  04-24-250      Hon.  Hugh E. Delozier, Jr., Judge**

---

**No. E2006-01741-COA-R9-CV  - FILED JUNE 7, 2007**

---

In this Estate, the parties in open court announced the terms of settlement between them of the entire Estate.  Appellant sought to set aside the settlement on the grounds of duress, but after an evidentiary hearing the Trial Court refused to set aside the settlement.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Probate Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Robert M. Cohen, Maryville, Tennessee, for appellant.

W. Phillip Reed, Maryville, Tennessee, for appellee.

**OPINION**

The issue before us arises out of the Estate of G. Wallace Creswell.  Creswell died testate on June 30, 2004, and his widow, Oral Ruth Creswell, presented his Will for probate, as she was named executrix of the estate.  The Will gave her certain bequests, and gave the remainder of the Estate to Creswell's son by a prior marriage, James Stewart Creswell.  Ms. Creswell gave Notice of Surviving Spouse's Election Against Will, and an Application for Homestead.  This matter was set for July 13, 2005.

On July 13, the Court enquired of the parties if they were ready to proceed, and they replied they were. Mrs. Creswell's attorney then announced to the Court that they had reached a settlement agreement which not only settled the motions before the Court, but also settled the entire estate. The Court asked them to present the agreement, and Mrs. Creswell's attorney announced that the residence on Maury Street would be Mrs. Creswell's sole property, free of any claim of the son, and that he would sign a quitclaim deed acknowledging such. The attorney stated there was a $73,000.00 CD at American Fidelity, along with a small administrative account that Mrs. Creswell had opened for the Estate, and that she would retain both of those as her sole property.

Mrs. Creswell's attorney stated that regarding the personalty, Mr. Creswell would receive one washstand with a red bowl and pitcher. There was then a recess, and the parties returned and announced that Mr. Creswell would receive two washstands, one pitcher and a bowl. The parties agreed that Mr. Creswell would also receive all of the carnival glass, and the curio cabinet with the collection of bells. The parties agreed that Mr. Creswell would receive the collection of mustache cups, and the collection of clocks, and would receive the boxes of brass objects and metal art that were in the basement. Further, that Mr. Creswell would receive the fruitwood china cabinet, and all of the silver objects, which his mother had collected. Also Mr. Creswell would receive boxes of coins, Masonic items, and a watch and pocketknife belonging to his father. Mr. Creswell was also to receive a filing cabinet with records, his mother's set of dishes, the contents of the shop, a boat and motor, a bed and chest of drawers from the basement, and all other contents of the basement except the lawn mower, freezer, tools, and washer/dryer. He would also get his father's recliner, a copper plant stand, his father's guns, the downstairs refrigerator, and a Cadillac and a truck.

Mr. Creswell was to receive a claw and ball chair, a picture, and any other memorabilia from his parents' trip to Australia. The parties agreed the Court would set Mrs. Creswell's attorney's fee as an administration expense chargeable to the estate, and that he would present an affidavit of his time.

The Court asked if this was a full settlement of all claims filed by Mrs. Creswell, and they replied it was, and stated that it was a comprehensive settlement of all the matters in the estate. The Court then administered the oath to Mrs. Creswell, and asked her if she agreed to the settlement, and that it was a full and complete resolution of all of her claims, and she replied in the affirmative. The Court then administered the oath to Mr. Creswell, and asked him if he agreed to the settlement, and agreed to it being a full and complete settlement of the estate, and if he agreed to the setting of fees as stated, and he replied in the affirmative. The Court then stated they would be bound to their agreement, and that the lawyers would have to draw up the documents. The Court stated that he was happy to be able to settle things, and he thought the decedent was honored by that.

An Order was filed on September 13, 2005, stating the parties had settled all issues pending in the Estate, and that the only thing remaining was to close the Estate and set attorney's fees and administrative costs, and set forth the details of the settlement.

The next Order entered was on September 21, 2005, reciting that Mr. Creswell made

an oral motion to set aside the September 13 agreement, and the Court states that for good cause, the Order was set aside, and ordered that a transcript be prepared of the July 13 hearing so that the parties could prepare an appropriate Agreed Order.  Mrs. Creswell then filed a Motion on November 4, 2005, stating that the parties (including Mr. Creswell's new attorney) had received a copy of the transcript but could not reach an Agreed Order.  She attached a proposed Order which the motion stated was believed to be an accurate statement of the settlement.

The Court then entered an Order Allowing Substitution of Counsel on November 8, 2005, and allowed attorney Robert Cohen to be substituted for Mr. Creswell's former attorney.

Ultimately, on January 26, 2006, the Court held an evidentiary hearing on whether the agreement between the parties should be set aside at the insistence of Mr. Creswell.  At that hearing,  Mr. Creswell testified that they were in court on July 13, 2005, and that Mr. Reed announced a settlement to the court.  Creswell testified that at one point during the announcement, they stopped and went back and he conferred with his attorney, and then the announcement continued.  Creswell admitted that he "swore to the agreement."

Mr. Creswell testified that his understanding was that he did not have to be in court when the motions regarding homestead, etc., were heard, because "that's guaranteed by the statute and there's no hearing about it".  He stated that his understanding was that the hearing was perfunctory, and his attendance was not required.  Creswell testified that he wished to repudiate the agreement made that day, and that he had been frustrated with his attorney for some time.  He testified that he was under a great deal of pressure that day, because they were going through "whirlwind" negotiations with various offers being made, and he did not have a coherent, written document to go by.  He stated that he was frustrated that his father's wishes were being preempted, because his father said in the Will that the personalty was to go to him, but the statute allowed his step-mother to change that.  Mr. Creswell testified there had been an "angry exchange", and he agreed to the settlement because of what was said in the recess, and he "felt that I had limited or no protection legally from my attorney when I came back out here."

Following the hearing, the Court entered an Order on May 10, 2006, reciting that the Motion to Repudiate Agreement had been heard and dismissed.  The Order then stated the terms of the announced settlement, and further stated that Mr. Creswell would receive all other assets of the Estate including, but not limited to, the Hillard Lyons investments and Met Life Insurance, stating these items were inadvertently omitted from the transcript.

The Court concluded that Mr. Creswell's discussions with his attorney and his attorney's alleged threat to withdraw did not establish duress or lack of consent, and that Creswell entered into the agreement knowingly and voluntarily.  Subsequently, the Court granted Creswell's Motion for an interlocutory appeal, pursuant to Rule 9, which we granted.

The issues before the Court are:

1.	Whether the Trial Court erred by refusing to allow Creswell to repudiate the agreement announced to the Trial Court on July 13, 2005?

2.	Whether the Trial Court erred by modifying and/or adding provisions to the agreement announced on July 13, 2005,?

3.	Whether this appeal is frivolous and justifies an award of damages?

Mr. Creswell argues that the parties' settlement agreement should have been set aside, because it was the product of duress, ambiguity, and/or mutual mistake of fact. Regarding duress, Mr. Creswell claims that he was very frustrated with the process and with his attorney, and that while the announcement was being made, he had a conference with his attorney that "multiplied" his anxious mental state, and they had an "angry exchange" but he felt he had no choice but to "roll over" and accept the agreement. He charges that the agreement is ambiguous because Mrs. Creswell's attorney stated during the announcement there might be other things in the house that they had not specifically identified. He claims a mutual mistake of fact because the parties anticipated that a hearing would be held on the day the settlement was entered.

We have defined duress as "a condition of mind produced by the improper external pressure or influence that practically destroys the free agency of a party, and causes him to do and act or make a contract not of his own volition, but under such wrongful external pressure." *Rainey v. Rainey*, 795 S.W.2d 139, 147 (Tenn. Ct. App. 1990). This Court went on to explain: "Although a determination of whether a party was pressured by duress can be difficult in light of the subjective nature of that party's mental condition at the time, '[w]hether such external pressure or influence is sufficient to destroy the free agency of a party, is a question to be determined by the age, sex, intelligence, experience and force of will of the party, the nature of the act, and all the attendant facts and circumstances.'" *Id.* (citations omitted). We have further defined duress as consisting of "unlawful restraint, intimidation, or compulsion that is so severe that it overcomes the mind or will of ordinary persons." *Boote v. Shivers*, 198 S.W.3d 732, 745 (Tenn. Ct. App. 2005).

The evidence in this record does not establish that the duress complained of by Mr. Creswell was sufficient to destroy his free agency, or that it was severe enough to overcome his will. He basically states that he was under pressure, was anxious, and that his attorney threatened to withdraw if he did not agree to the settlement. As the Trial Court found, however, none of these allegations, if true, would be sufficient to show that a man of Mr. Creswell's age, experience, and intelligence[1] was overcome or pressured to agree to a settlement that he did not want. *See also*

---

[1]Mr. Creswell holds a degree in Nuclear Engineering from the University of Tennessee, and did graduate level studies at Georgia Tech and the National Institute of Health. He has worked as an Engineer for the Tennessee Valley Authority, and as a Reactor Inspector for the Nuclear Regulatory Commission.

*Golden v. Hood*, 2000 WL 122195 (Tenn. Ct. App. Jan. 26, 2000).

Absent such a showing, the settlement must be enforced, since its terms were announced in open court, were affirmed by both parties under oath, and received the sanction of the Court at that time. As was recently explained by the Supreme Court when dealing with the issue of a party's repudiation of a settlement agreement that was not announced to the court:

> We begin our analysis with the case of *Harbour v. Brown for Ulrich*, 732 S.W.2d 598 (Tenn. 1987). In that case, the appellant sought specific performance of an alleged real estate contract and the enjoining of a threatened foreclosure action under an existing deed of trust. The appellant filed a cross-complaint for judgment on the note secured by the deed of trust. On the day of trial, the parties announced that they had reached an agreement, the terms of which were not announced to the court. Prior to entry of judgment, the appellee repudiated the terms of the agreement. Holding that the agreement was not enforceable, this Court stated that although the resolution of disputes by agreement is encouraged, "a valid consent judgment can not be entered by a court when one party withdraws his consent and this fact is communicated to the court prior to entry of the judgment." *Id.* at 599 (citing *Van Donselaar v. Van Donselaar*, 249 Iowa 504, 87 N.W.2d 311 (1958)). The Court in *Harbour* further held that "consent must exist at the very moment the court undertakes to make the agreement the judgment of the court." *Harbour*, 732 S.W.2d at 599 (quoting *Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288 (1951)). Thus, "until entered by the court, the matter being the question of an agreement between the parties, either party may repudiate the agreement because of an actual or supposed defense to the agreement." *Harbour,* 732 S.W.2d at 600.

> * * *

> Citing to language in *Harbour*, the Court of Appeals in *Environmental Abatement* noted an exception to the general rule that consent must exist at the time of judgment. That exception would allow a court to enter a consent judgment "which merely documents an earlier agreement even where consent does not exist at the time of entry of the written order." *Id.* at 538-39. The exception provides further that when the terms of an agreement are announced or stipulated in open court, a judge may later enter a consent judgment based on that agreement regardless of a party's repudiation between the time of the announcement and the judgment. *Id.* at 539. This exception is rooted in the language in *Harbour*, which states that " '[t]he power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement receives the sanction of the court or is rendered and promulgated as a judgment.' " *Harbour*, 732 S.W.2d at 599 (quoting 49 C.J.S. Judgments § 174(b)).

*Ledbetter v. Ledbetter*, 163 S.W.3d 681, 684-685 (Tenn. 2005).

Tennessee Courts uniformly hold that if the terms of a settlement are announced to the court or memorialized in a signed, enforceable contract, a judgment may be entered thereon, even if one party later repudiates. *See Barnes v. Barnes*, 193 S.W.3d 495 (Tenn. 2006); *McMahan v. McMahan*, 2005 WL 3287475 (Tenn. Ct. App. 2005); *Myers v. Myers*, 2005 WL 936925 (Tenn. Ct. App. Apr. 22, 2005); *Persada v. Persada*, 2002 WL 31640564 (Tenn. Ct. App. Nov. 22, 2002); *Golden v. Hood*, 2000 WL 122195 (Tenn. Ct. App. Jan. 26, 2000).

Mr. Creswell further attacks the agreement by arguing that the terms were ambiguous, because reference was made to "miscellaneous items in boxes", and because the Hillard Lyons account and Met Life Insurance were not specifically announced. A review of the proceedings, demonstrates that its terms were sufficiently definite, and that the parties intent was for the widow to have certain items, and then Mr. Creswell to have the rest, including the Hillard Lyons account and Met Life Insurance, as well as various boxes of personalty in the basement that were referenced. The parties' intent is clear, and was appropriately memorialized in the written Orders. The terms of the settlement were very definite and specific, especially in dealing with the items of personalty that Mr. Creswell wanted, and there has been no ambiguity shown that would invalidate the agreement.

Finally, Creswell argues there was a mutual mistake of fact which would render the agreement voidable, in that the parties believed they were there for a hearing on the day they reached a settlement, but he asserts that a hearing could not have taken place, because no administrator ad litem had been appointed, there had been no inventory/accounting, etc. The record establishes that the hearing had been set on Mrs. Creswell's motions regarding year's support, personal property, etc., and that the Trial Court stated at the beginning of the hearing that those issues would be heard, at which time the parties announced they had settled not only those issues, but the entire Estate. The record does not support Mr. Creswell's assertions regarding mutual mistake of fact. Assuming *arguendo* he had a misunderstanding regarding what would occur on that day, there is no showing of mutual misunderstanding. We hold that the Court properly entered Judgment validating the agreement.

Next, Creswell argues the Trial Court impermissibly added provisions to the terms of the settlement, since the Hillard Lyons account and Met Life Insurance proceeds were not mentioned in the announcement made in open court. However, Mr. Creswell admitted he was supposed to receive the Hillard Lyons account and the Met Life Insurance, and that this was the parties' intent. These items were part of the "rest of the Estate" that was to go to Mr. Creswell, and were properly dealt with in the written Orders submitted to and entered by the Court. The parties' intent in the settlement agreement was for Mr. Creswell to have these items, as he admits, and thus he cannot show that they were "impermissibly" added to the terms of the settlement by the Court.

Likewise, the parties clearly agreed that the attorney's fees would be set by the Court and charged as an expense against the Estate, as this was part of the announced settlement. Creswell's argument that, by awarding him the remainder of the estate, the Court somehow

improperly charged this fee to him is without merit. The parties' announcement was clear that this fee would be charged to the Estate as an administration expense. Creswell simply seeks to avoid his agreement by arguing that this is somehow inappropriate. If Creswell is to receive the remainder of the Estate, excepting certain specific items awarded to Mrs. Creswell, under the agreement, whether the fee is charged to the Estate as a whole or to his remainder is a distinction without a difference. Creswell's argument is without merit.

Mrs. Creswell argues that she should be awarded damages for Mr. Creswell's filing a frivolous appeal. In our discretion, we overrule this Motion and affirm the Trial Court with the cost of the appeal assessed to James Stewart Creswell.

_____
HERSCHEL PICKENS FRANKS, P.J.