# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs October 13, 2014

## ERIC BRYAN HOWARD v. KELLY JO HALFORD

**Appeal from the Juvenile Court for Cumberland County**
**No. 2012-JV-2632     Larry Michael Warner, Judge**

_____

**No. E2014-00002-COA-R3-JV-FILED-DECEMBER 22, 2014**

_____

This case involves the trial court's grant of a post-judgment motion to clarify conflicting provisions regarding the residential co-parenting schedule in the parties' agreed permanent parenting plan. The mother filed the motion approximately five weeks after entry of the permanent parenting plan order. Following a hearing at which the trial court considered argument from both parties' counsel but heard no proof, the court found in favor of the mother's interpretation of the parties' intent when the order was submitted. The father now appeals, asserting that the court's ruling was a modification of the parenting plan made without proof of a material change of circumstance warranting a modification. We determine that the trial court's order operated as a clarification of an ambiguous and contradictory provision in the permanent parenting plan, rather than a modification of the plan. However, because the trial court failed to hold an evidentiary hearing to determine the parties' intent at the time the agreed permanent parenting plan was entered, we vacate the judgment and remand for an evidentiary hearing with subsequent clarification of the ambiguous provision at issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, C.J., and D. MICHAEL SWINEY, J., joined.

Cynthia Fields Davis, Crossville, Tennessee, for the appellant, Eric Bryan Howard.

Justin C. Angel, Pikeville, Tennessee, for the appellee, Kelly Jo Halford.

**OPINION**

**I. Factual and Procedural Background**

The facts underlying this action are essentially undisputed. At the time the parties' son, Colton ("the Child"), was born in September 2010, the plaintiff, Eric Bryan Howard ("Father"), and the defendant, Kelly Jo Halford ("Mother"), were living together. The parties subsequently separated, and Father began working offshore in Texas while maintaining his domicile in Tennessee. On March 9, 2012, Father filed a petition to establish parentage, requesting a DNA test to prove paternity, residential co-parenting time with the Child, and establishment of child support.[1] On June 6, 2012, the trial court entered a temporary order, *inter alia*, granting Father's request for a DNA test and ratifying a temporary agreement reached by the parties as to residential co-parenting time. Mother was designated as the primary residential parent, with Father to enjoy co-parenting time with the Child when he was "home from his employment" "Monday through Friday while [Mother was] at work." Co-parenting time was also designated for Father during specific weekends in the two months following the agreement.

The parties proceeded to mediation on October 5, 2012, and subsequently filed a mediated agreement on October 9, 2012. Pursuant to this agreement, the parties would exchange the Child "the day after Father returns home from sea." Father was then to "keep [the Child] until the second weekend." The Child would reside with Mother "from 6 p.m. Friday until 6 p.m. Sunday each 2nd weekend."

Having received and reviewed the results of the DNA testing, the trial court entered an order on January 4, 2013, declaring Father "the natural and biological father" of the Child. The court entered a permanent parenting plan order, memorializing an agreement reached by the parties. The permanent parenting plan, signed by both parties' counsel, included the following provision as to the residential schedule:

**DAY-TO-DAY SCHEDULE**

The **X** mother _____ father shall have responsibility for the care of the child or children except at the following times when the other parent shall have responsibility: **The parties shall exchange the minor child on the day after the Father returns home from sea. The Father shall keep the minor child until the second (2nd) weekend with the Mother receiving parenting time**

---

[1]It is undisputed that Father consistently paid child support as ordered throughout the subsequent proceedings, and child support is not at issue on appeal.

**from 6:00 p.m. on Friday to 6:00 p.m. on Sunday each second (2nd) weekend the Father is home from work.**

The Father shall also have responsibility for the care of the child at the additional parenting times specified below:

From:  **Monday, Tuesday, Wednesday, Thursday and Friday** from **8:00**
                                        Day and Time
 **a.m. until 4:30 p.m.**
Day and Time

___ every week     ___ every other weekend    **X**  other: **During the weeks while the Father is in town and the Mother is at work.**

This parenting schedule begins **October 5, 2012** or ____ date of the Court's
                                        Day and Time
Order.

(Emphasis in original.)

On February 15, 2013, Mother filed a "Motion for Clarification," requesting that the trial court clarify "conflicting language" contained within the permanent parenting plan. Nine months later, the trial court heard argument of counsel on November 15, 2013. The court subsequently entered a final judgment and revised permanent parenting plan on December 9, 2013. Father's co-parenting time within the day-to-day schedule set forth in the final judgment was established as follows:

> [Father] shall have the parties' minor child . . . when the Father returns home from sea, every other weekend from 6:00 p.m. on Friday to 6:00 p.m. on Sunday. The father shall also have the minor child when he is home from sea, **during the day only**, from 7:30 a.m. until 6:00 p.m. on Monday, Tuesday, Wednesday, Thursday, and Friday while the mother is at work. The child is to be in the mother's care at night during the week.

(Emphasis in original.)

In its final judgment, the trial court also granted a motion to withdraw previously filed by Father's trial counsel, Brett A. York. Attorney Cynthia Fields Davis subsequently filed a notice of appearance on behalf of Father. Acting through Ms. Davis, Father timely appealed the final judgment.

## II. Issue Presented

On appeal, Father presents one issue, which we have restated slightly:

Whether the trial court erred by modifying the parties' permanent parenting plan as to the residential co-parenting schedule upon a motion for clarification of that schedule and without hearing proof on the matter.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). A trial court's decision to grant a Tennessee Rule of Civil Procedure 60.01 motion to correct a clerical error in a judgment is reviewed under an abuse of discretion standard. *Jackman v. Jackman*, 373 S.W.3d 535, 541 (Tenn. Ct. App. 2011). "Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

## IV. Clarification of Conflicting Provisions in Residential Co-Parenting Schedule

Father contends that the trial court erred when, in response to Mother's motion for clarification, it amended the permanent parenting plan order to substantively modify the residential co-parenting schedule without any showing of a material change in circumstance since entry of the permanent parenting plan. He further contends that the trial court erred by analyzing the Child's best interest as to the residential schedule without hearing proof on the matter. Mother acknowledges the general rule that a trial court must find that a material change in circumstance affecting the child has occurred before it considers whether a change in the residential co-parenting schedule would be in the best interest of the child. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B) (2014); *Armbrister v. Armbrister*, 414 S.W.3d 685, 697-98 (Tenn. 2013). Mother's argument is that in amending the permanent parenting plan order, the trial court clarified a vague and ambiguous provision within the original order and thus was correcting a clerical error, pursuant to Tennessee Rule of Civil Procedure 60.01, rather than modifying the permanent parenting plan. We conclude that the trial court's judgment operated to clarify an ambiguous and contradictory provision, pursuant to Tennessee Rule of Civil Procedure 60.01, but that in doing so, the court erred by making factual findings

-4-

regarding the parties' intended agreement without offering opportunity for the parties to testify or present other relevant evidence.

"Parenting arrangements for the parents of a non-marital child must be established and modified using the same standards used in divorce cases." *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821 at *6 n.5 (Tenn. Ct. App. Sept. 4, 2007) (citing Tenn. Code Ann. § 36-2-311(a)(9)). Pursuant to Tennessee Code Annotated § 36-6-404(c)(1)(A), a court shall approve a permanent parenting plan agreed upon by the parties with its entry of a final decree or judgment. It is well established, however, that parties cannot "relieve the trial court of its duty to ensure that disputes between parents are resolved in the best interests of the children." *Tuetken v. Tuetkan*, 320 S.W.3d 262, 272 (Tenn. 2010). The parties' intent as to their agreement should be considered as it was at the time the trial court entered the agreed order. *See Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 599 (Tenn. 1987) ("'The power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement receives the sanction of the court or is rendered and promulgated as a judgment.'") (quoting 49 C.J.S. Judgments § 174(b)); *see also In re Estate of Creswell*, 238 S.W.3d 263, 268 (Tenn. Ct. App. 2007).

Regarding the general rule for interpreting orders and judgments, this Court has explained:

> [A] judgment should be so construed as to give effect to every part of it and where there are two possible interpretations that one will be adopted which is in harmony with the entire record, and is such as ought to have been rendered and is such as is within the jurisdictional power of the court. Moreover, the judgment will be read in the light of the pleadings and the other parts of the record.

*Lamar Adver. Co. v. By-Pass Partners*, 313 S.W.3d 779, 785 (Tenn. Ct. App. 2009) (quoting *John Barb, Inc. v. Underwriters at Lloyds of London*, 653 S.W.2d 422, 423 (Tenn. Ct. App. 1983)) (additional internal citations omitted).

Although Mother invokes Rule 60.01 in her responsive brief on appeal, she did not specify the rule as the basis for her motion for clarification in the motion itself. The substantive text of her motion stated in its entirety:

> Comes now the Respondent, Kelly Jo Halford, by and through counsel, and moves this Honorable Court for a clarification of the Agreed Order and Parenting Plan entered in this cause on January 4, 2013, due to conflicting language in the permanent parenting plan.

Tennessee Rule of Civil Procedure 60.01 provides:

> **60.01. Clerical Mistakes.** – Clerical mistakes in judgments, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

No transcript of the November 15, 2013 hearing on the motion for clarification is available. Following the filing of his notice of appeal, Father filed a statement of the evidence, pursuant to Tennessee Rule of Appellate Procedure 24(c), essentially stating that no proof was presented at the hearing. Mother subsequently submitted a statement of the evidence to the trial court, which bears the trial court judge's approval and signature. *See* Tenn. R. App. P. 24(c), (e) (providing that "[a]ny differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court . . . ."). We note also that in Father's brief on appeal, he cites the trial court's language as quoted in Mother's statement of the evidence and does not dispute the accuracy of the statement. Mother's statement of the evidence explains in pertinent part:

1.  That this matter came to be heard on the 15th day of November, 2013 upon a Motion for Clarification filed by [Mother].

2.  That the Judge, the Honorable Larry M. Warner, examined the last entered Order in the file, discovered the ambiguous and vague language, and made his finding to clarify the Order.

3.  That no new proof was presented, however, the Judge did examine the record, the court file, and the last entered Order.

4.  That counsel for both parties made statements regarding the vague and ambiguous language in the last entered Order.

5.  That the trial Judge did state that he was considering the child's best interest and that he was clarifying the last entered Order in the child's best interest of not being "bounced around from house to house" and [to] keep the child from being pulled away from his mother for extended periods of time when the father returned from working offshore.

Upon our careful and thorough review of the record, we determine that the trial court properly treated Mother's motion for clarification as a Rule 60.01 motion. *See, e.g., Battleson v. Battleson*, 223 S.W.3d 278, 288 (Tenn. Ct. App. 2006) (concluding that, pursuant to Rule 60.01, the trial court properly clarified a parenting plan provision that did "not make sense on its face" upon the mother's motion to clarify the existing provision even though the motion did not specify Rule 60.01 as its basis). The provision of the permanent parenting plan at issue is ambiguous on its face and actually contradicts itself. Father could not "keep the minor child" from an indeterminate day of his return through "the second (2nd) weekend" and also have his co-parenting time end at 4:30 p.m. each weekday.

Once this ambiguity had been brought to the trial court's attention, the court did not err by considering the entire record in determining the interpretation of the parenting plan that would be "in harmony" with the parties' previous agreements in the record. *See Lamar Adver.*, 313 S.W.3d at 786. However, we conclude that while the court clearly considered indications in the previous temporary parenting plan and mediated agreement as to what the parties' intent was at the time of the permanent parenting plan's entry, the court also based its decision upon factual findings made without presentation of proof.

Father asserts that the trial court's comments made during the motion hearing, specifically that it was considering the Child's best interest of not being "bounced around from house to house" and "pulled away from his mother for extended periods of time," demonstrated factual findings requiring a hearing of proof on the matter. We agree with Father on this point. Although we are limited in our review of the November 15, 2013 hearing by the parameters of the approved statement of the evidence, it is clear that the trial court reached conclusions regarding the parties' agreement as to the residential schedule and the Child's best interest that were not based upon the court's review of the record alone. We therefore vacate the trial court's order clarifying the ambiguity in the agreed permanent parenting plan and remand for the court to (1) conduct an evidentiary hearing to determine the parties' intent at the time the agreed permanent parenting plan was entered and (2) clarify the ambiguous provision accordingly.

## V.  Conclusion

For the reasons stated above, we vacate the judgment of the trial court. This case is remanded to the trial court for proceedings consistent with this opinion. Costs on appeal are taxed to the appellee, Kelly Jo Halford.


_____
THOMAS R. FRIERSON, II, JUDGE