IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 25, 2011 Session

## JENNIFER LYNN JACKMAN v. KENNETH ROBERT JACKMAN

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005602-02      Donna M. Fields, Judge**

**No. W2010-01435-COA-R3-CV - Filed October 24, 2011**

This is an appeal of an alimony award. The trial court entered an order declaring Husband and Wife divorced, but reserved all financial issues, including alimony, for trial at a later date. After the trial, the trial court entered a final order awarding Wife rehabilitative alimony and ordering her to undergo a vocational rehabilitation evaluation. Husband filed a petition for contempt and to modify the final order based on Wife's failure to file proof of her completion of a vocational rehabilitation evaluation. In response, Wife filed proof of her completed vocational rehabilitation evaluation, and filed a counter-petition for contempt and to modify the final order seeking alimony *in futuro*. Subsequently, Wife filed a motion pursuant to Tennessee Rule of Civil Procedure 60.01, arguing that the language of the final order failed to include the trial court's findings that the alimony award was not final, and was subject to change based on the results of the vocational rehabilitation evaluation. The trial court granted Wife's Rule 60.01 motion, and conducted a hearing to determine the appropriate nature and amount of alimony to be awarded based on the results of the vocational rehabilitation evaluation. Following the hearing, the trial court awarded Wife alimony *in futuro*, increased the amount of alimony awarded, and required Husband to maintain additional life insurance to secure his alimony *in futuro* obligation. Husband appeals the order granting Wife's Rule 60.01 motion, and further argues that Wife was required to show a substantial and material change of circumstances to warrant a modification of the original rehabilitative alimony award. Finding that the trial court's alimony award was not final, and therefore the trial court retained jurisdiction to consider the results of the vocational rehabilitation evaluation, we affirm the trial court's award of alimony *in futuro*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

John C. Ryland and Robert L. Parris, Memphis, Tennessee, for the appellant, Kenneth Robert Jackman.

Emily Lauren Hamm and Kay Farese Turner, Memphis, Tennessee, for the appellee, Jennifer Lynn Jackman.

**OPINION**

**I. Background and Procedural History**

Kenneth Robert Jackman ("Husband") and Jennifer Lynn Jackman ("Wife") married on February 18, 1996. Both Husband and Wife had two previous marriages. In July 2002, the parties separated after Wife discovered Husband was engaged in an extramarital affair. On November 18, 2005, the parties were divorced. Husband stipulated Wife was entitled to a divorce on the grounds of adultery. Further, the trial court found that both parties were entitled to a divorce pursuant to Tennessee Code Annotated section 36-4-129. The trial court reserved all financial issues in the case, including alimony, for trial on February 20, 2006.

At trial, Wife sought long-term alimony from Husband. Wife argued that she was economically disadvantaged, could not be rehabilitated, and could never attain a standard of living commensurate to the standard she enjoyed while married to Husband or the standard Husband would enjoy after the divorce. Wife testified that she suffered from depression, an anxiety disorder, incontinence problems, a sleeping disorder, recurrent corneal erosion, ulcerated colitis, irritable bowel syndrome, that she needed new dentures, and that she was prescribed medication for an undifferentiated connective tissue disorder. Wife also testified that her problems with anxiety and depression preceded the parties' marriage. Although Wife did not work during the marriage, she was responsible for the care of her terminally ill mother at the time of the trial.

The trial court also considered the deposition testimony of Wife's treating psychiatrist, Dr. Martha Gordon ("Dr. Gordon"). Dr. Gordon diagnosed Wife with a major depressive disorder and an obsessive compulsive disorder that, in her opinion, prevented Wife from working. Additionally, the trial court considered the testimony of Dr. Rebecca Caperton Rutledge ("Dr. Rutledge"), a psychologist appointed by the trial court to conduct a psychological evaluation on Wife. Dr. Rutledge testified that Wife had personality characteristics of histrionic personality disorder, dependent disorder, obsessive disorder, and borderline personality disorder. Further, Dr. Rutledge testified that she did not believe Wife had the ability to work outside the home because of the debilitating impact Wife's disorders had on her self-motivation. Dr. Rutledge, however, did agree with the trial court's suggestion that Wife possibly could motivate herself to undergo a vocational rehabilitation

-2-

evaluation if the consequence of noncompliance was a reduction or termination of spousal support.

At the conclusion of the trial, the trial court issued an oral ruling. The trial court ordered Husband to pay Wife rehabilitative alimony in the amount of $2,000 per month plus the costs of Wife's COBRA premiums. When Wife's COBRA coverage expired, Husband's alimony obligation would increase to $2,400 per month until Wife reached the age of 59 ½, at which time she could draw from the retirement benefits she received from Husband in the division of the marital estate. Further, the trial court ordered Wife to undergo a vocational rehabilitation evaluation and enroll in a displaced spouses program. The trial court stressed that Wife's failure to do so could result in termination of her alimony award.

On March 15, 2006, the trial court held a conference with counsel for both parties and the guardian ad litem[1] to discuss the wording of the final order that would memorialize the trial court's oral ruling. Counsel for Wife provided the trial court with a proposed draft of an order, which the trial court took under review and advised that it would make any changes deemed necessary. On April 10, 2006, the trial court held a second conference to discuss the changes it made to the language of the proposed order. On April 17, 2006, the trial court entered a final order memorializing its ruling in the case.

The final order provided the following with regard to alimony:

> The Court has considered the testimony of Wife's treating psychiatrist, Dr. Martha Gordon, with regard to her opinion that Wife cannot be rehabilitated. The Court has also considered the testimony of Dr. Rebecca Caperton Rutledge and Wife's testimony regarding her care for her terminally-ill mother, which has substantially assisted in the Court concluding that Wife may be rehabilitated. From March 2006 and continuing through the expiration of Wife's COBRA coverage in November 2008, Husband shall pay to Wife rehabilitative alimony in the amount of $2,000 per month, which alimony shall be taxable to Wife, deductible to Husband, and non-dischargeable in bankruptcy proceedings. Said alimony shall be due and payable on the 1st day of each month and considered past-due on the 5th of each month. From December 2008 through August 2011 (at which time Wife will reach the age of 59 ½ years old), Husband shall pay to Wife rehabilitative alimony in the

---

[1]Although the record does not contain an order appointing the guardian ad litem, the record does contain an order allowing the guardian ad litem to withdraw. Husband's brief alleges that the trial court appointed a guardian ad litem for Wife during the divorce proceedings because she was not complying with discovery requests or the rules of the court.

amount of $2,400.00 per month, which alimony shall be taxable to Wife, deductible to Husband, and non-dischargeable in bankruptcy proceedings. Said alimony shall be due and payable on the 1st day of each month and considered past-due on the 5th of each month.

. . . .

The Court further orders Wife to undergo a vocational rehabilitation evaluation. Wife shall complete said evaluation within 90 days of the entry of this order, or within 30 days of her mother's death, and the evaluator shall make a report to the Court regarding the results of the evaluation and Wife's cooperation with same. Wife's failure to complete the evaluation in a timely manner may be a basis for the Court reducing or terminating the alimony enumerated in this paragraph.

On August 20, 2008, Husband filed a petition for contempt and to modify the final order. Husband's petition requested, *inter alia*, the trial court reduce or terminate Wife's alimony based on her failure to provide proof of her completion of a vocational rehabilitation evaluation and displaced spouses program as required by the final order. On October 8, 2008, Wife filed proof of her completed vocational rehabilitation evaluation, dated September 11, 2006, which concluded that Wife was not employable. Shortly thereafter, on October 10, 2008, Wife filed her response and counter-petition for contempt and to modify the final order. Wife argued that the award of rehabilitative alimony should be converted to alimony *in futuro* based on the findings of the vocational rehabilitation evaluation. Subsequently, the parties entered into a consent decree in which Wife agreed to undergo a second vocational and psychological evaluation to determine whether she could maintain meaningful employment.

On June 5, 2009, Wife filed a motion to amend the final order to correct a clerical error pursuant to Tennessee Rule of Civil Procedure 60.01. Wife alleged that the final order omitted the trial court's findings that the alimony award was not final, and was subject to change based on the results of the vocational rehabilitation evaluation. Further, Wife argued that the trial court intended to review the vocational rehabilitation evaluation before making a final determination on Wife's ability to be rehabilitated. On October 28, 2009, after conducting a hearing, the trial court granted Wife's motion and entered the amended final order *nunc pro tunc* to April 17, 2006.

Following the trial court's amendment pursuant to Wife's Rule 60.01 motion, the amended final order provided the following with regard to alimony:

The Court has considered the testimony of Wife's treating psychiatrist, Dr. Martha Gordon, with regard to her opinion that Wife cannot be rehabilitated. The Court has also considered the testimony of Dr. Rebecca Caperton Rutledge and Wife's testimony regarding her care for her terminally-ill mother, which has substantially assisted in the Court concluding that Wife may be able to be rehabilitated. Wife is hereby ordered to be evaluated by the Tennessee Department of Vocational Rehabilitation. If after that evaluation, Wife is determined to be unemployable, the Court will revisit the issue of support at that time. In the interim, and pending such future determination, from March 2006 and continuing through the expiration of Wife's COBRA coverage in November 2008, Husband shall pay Wife rehabilitative alimony in the amount of $2,000.00 per month, which alimony shall be taxable to Wife, deductible to Husband, and non-dischargeable in bankruptcy proceedings. Said alimony shall be due and payable on the first day of each month and considered past due on the fifth of each month. From December 2008 until such time as the Court makes a further determination as to Wife's ability to be rehabilitated, Husband shall pay to Wife rehabilitative alimony in the amount of $2,400.00 per month, which alimony shall be taxable to Wife, deductible to Husband, and non-dischargeable in bankruptcy proceedings. Said alimony shall be due and payable on the first day of each month and considered past due on the fifth of each month. If, after the evaluation, Wife is determined by the Tennessee Department of Vocational Rehabilitation to be unemployable, the Court will conduct a further hearing on the appropriate nature and amount of this support at that time. (Emphasis added.)

On May 13, 2010, the trial court conducted a hearing on Husband's petition and Wife's counter-petition to modify the final order. At the hearing, Wife argued that she was entitled to alimony *in futuro* based on the results of the 2006 and 2009 vocational rehabilitation evaluations, and her testimony regarding her mental and physical health conditions. The trial court found that Wife was not capable of rehabilitation, and converted Husband's rehabilitative alimony obligation to alimony *in futuro*. The trial court increased Husband's alimony obligation from $2,400 per month to $2,900 per month until November 2012 when the monthly obligation would increase an additional $200 per month.[2] The trial court further ordered that Husband's alimony obligation would be reduced by any disability or retirement benefits Wife received or would be eligible to receive. Additionally, the trial court required Husband to maintain an additional $150,000 in life insurance coverage to

---

[2]The trial court initially ordered Husband to pay Wife $200 per month because of his dissipation of the marital estate. Husband's dissipation payments end in November 2012, thus the trial court ordered Husband's alimony obligation increase by $200 per month at this time.

secure his alimony obligation, and name Wife as the sole irrevocable beneficiary thereon.[3]
On July 8, 2010, the trial court entered an order memorializing its oral ruling. Husband
timely filed a notice of appeal.

## II. Issues Presented

Husband presents the following issues for our review:

(1)     Whether the trial court erred by amending the final order
        pursuant to Tennessee Rule of Civil Procedure 60.01,

(2)     Whether the trial court erred by converting Husband's alimony
        obligation from rehabilitative alimony to alimony *in futuro*,

(3)     Whether the trial court erred by increasing the amount of
        Husband's alimony obligation, and

(4)     Whether the trial court erred by requiring Husband to maintain
        additional life insurance coverage to secure his alimony
        obligation.

## III. Standard of Review

A trial court's decision regarding an award of spousal support is factually driven and
involves the careful balancing of many factors. *Robertson v. Robertson*, 76 S.W.3d 337,
340-41 (Tenn. 2002); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). "[T]he role of
an appellate court in reviewing an award of spousal support is to determine whether the trial
court applied the correct legal standard and reached a decision that is not clearly
unreasonable." *Gonsewski v. Gonsewski*, M2009-00894-SC-R11CV, 2011 WL 4116654, at
*3 (Tenn. Sept. 16, 2011) (quoting *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn.
2006)). We review the trial court's findings of fact *de novo* with a presumption of
correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Crabtree
v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). No presumption of correctness attaches to
the trial court's conclusions of law, however, and our review is *de novo*. *Bowden v. Ward*,
27 S.W.3d 913, 916 (Tenn. 2000).

---

[3]In total, the trial court required Husband to maintain $170,000 in life insurance coverage to secure
his alimony *in futuro* obligation. In addition to the $150,000 ordered on May 13, 2010, the trial court first
required Husband to maintain $20,000 in life insurance coverage in its original final order on April 17, 2006.

We review a trial court's decision whether to grant a Rule 60.01 motion under an abuse of discretion standard. *SecurAmerica Bus. Credit v. Schledwitz*, No. W2009-02571-COA-R3-CV, 2011 WL 3808232, at *8 (Tenn. Ct. App. Aug. 26, 2011) (citation omitted). Similarly, we decline to second-guess a trial court's decision to award spousal support absent an abuse of discretion. *Gonsewski*, 2011 WL 4116654 at *3 (citing *Robertson*, 76 S.W.3d at 343). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski,* 2011 WL 4116654 at *3 (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). This standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Rather, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).

## IV.  Analysis

### A.  Rule 60.01 Motion

Husband first argues that the trial court abused its discretion by amending the final order pursuant to Tennessee Rule of Civil Procedure 60.01. This rule provides in part:

> Clerical mistakes in judgments, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders.

Tenn. R. Civ. P. 60.01. "Rule 60.01 is designed to afford relief in cases in which the judgment or order, either standing alone or when viewed in connection with other portions of the record, shows facial errors arising from oversight or omission." *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 49 (Tenn. 1986) (quoting *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976)). Rule 60.01 "is intended to be used to correct errors in a judgment which cause the judgment to fail to reflect the court's ruling accurately," *Addington v. Staggs*, No. 88-214-II, 1989 WL 5453, at *3 (Tenn. Ct. App. Jan. 27, 1989), whether those errors are "inclusions, transpositions, or the leaving out of something the judge intended should go into the order." *Id.* at *2 (citation omitted). In analyzing the trial court's application of Rule 60.01, we are reminded "to strike a proper balance between the competing principles of finality and justice." *Continental Cas. Co.,* 720 S.W.2d at 49 (quoting *Jerkins*, 533 S.W.2d

at 280).

Husband argues that the language in the April 17, 2006 final order was unambiguous, and therefore the trial court erred by substituting its later expressed subjective intent to modify his alimony obligation. In support of his position, Husband relies on the cases of *Warren v. Warren*, No. 03A01-9708-CV-00360, 1998 WL 16041, at *2 (Tenn. Ct. App. Jan. 14, 1998), and *Williams v. Williams*, No. 03A01-9105CV00182, 1991 WL 253301, at *2 (Tenn. Ct. App. Mar. 2, 1992). In *Warren*, the court of appeals disagreed with the trial court's use of Rule 60.01 because the judgment was "not ambiguous, and the subjective 'intent' later expressed by the Trial Judge, [did] not fall within the application of [Rule 60.01]." *Warren*, 1998 WL 16041, at *2. Similarly, while the court in *Williams* rested its holding on other grounds, the court stated that Rule 60.01 "does not apply to altering the plain meaning of a judgment or order on a subjective rationale as was done in this case." *Williams*, 1991 WL 253301, at *2. Further, Husband points to various portions of the record that he alleges clearly establish that the trial court's intent behind ordering the vocational rehabilitation evaluation was to motivate Wife to enter the workforce, not to determine whether she could be rehabilitated.

In response, Wife argues that the trial court did not err because the April 17, 2006, final order omitted the trial court's findings that the alimony award was contingent upon the results of her vocational rehabilitation evaluation. Wife relies on the case of *Woody v. Woody*, No. E2001-02078-COA-R3-CV, 2002 WL 31421668 (Tenn. Ct. App. Oct. 29, 2002). In *Woody*, the trial court awarded wife one half of husband's pension fund as part of her marital property award. *Id.* at *1. Although the trial court reviewed the final decree before entering it seven years earlier, the final divorce decree only addressed division of a portion of husband's pension fund. *Id.* at *2 Thereafter, the trial court amended the final decree pursuant to Rule 60.01 to clarify its original intention to equally divide all components of husband's pension fund. *Id.* After reviewing the record as a whole, this Court affirmed, stating that the trial court appropriately corrected this unintentional omission under Rule 60.01. *Id.* Similar to Husband, Wife also cites to various portions of the record that she argues proves that the trial court intended to review the results of the vocational rehabilitation evaluation before making a final determination on her ability to be rehabilitated.

After reviewing the record, we conclude that the trial court did not abuse its discretion by amending the final order pursuant to Rule 60.01. Although we find support for both Husband and Wife's arguments throughout the record, we believe that the trial court is in the best position to interpret its own orders. *Wilson v. Schwind*, 260 S.W.3d 454, 457-58 (Tenn. Ct. App. 2007) ("'[T]he trial judge is in the best position to interpret his own orders.'") (quoting *Mark Pirtle Chevrolet, Inc. v. Celebration Nissan, Inc.*, No. M2002-00554-COA-R3-CV, 2003 WL 21047139, at *3 (Tenn. Ct. App. May 9, 2003)); *Richardson v.*

*Richardson*, 969 S.W.2d 931, 935 (Tenn. Ct. App. 1997) ("Even though the judge has no independent memory of the proceedings, we still believe that the trial court is the best interpreter of its own orders."). Furthermore, we are "even further removed from the events surrounding the [final] order than is the trial court, and we would be reluctant to say that the judge's order means something different from what [she] says it means." *Richardson,* 969 S.W.2d at 935. At the hearing on Wife's Rule 60.01 motion, the trial court stated that it would not have ordered the vocational rehabilitation evaluation if it did not plan on using the results to determine the appropriate nature and amount of alimony. Rule 60.01 was intended to correct such unintentional omissions in orders where the trial court leaves out something it intended should go into the order. *Addington,* 1989 WL 5453, at *2. While the trial court may not have perfectly articulated its intent in the April 17, 2006 final order, the abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Gonsewski,* 2011 WL 4116654 at *3 (citations omitted). Viewing the evidence in the light most favorable to the trial court's decision, *id.* (citations omitted), we find no abuse of discretion in the trial court's decision to amend the final order pursuant to Rule 60.01.

## B. Alimony

The next question before this Court is whether the trial court abused its discretion by converting Husband's alimony obligation from rehabilitative alimony to alimony *in futuro*. Husband argues that the trial court abused its discretion by converting his rehabilitative alimony obligation to alimony *in futuro* because Wife failed to meet the burden of proof requirements set forth in Tennessee Code Annotated section 36-5-121(e)(2). This provision of the Code provides:

> An award of rehabilitative alimony shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of a substantial and material change in circumstances. For rehabilitative alimony to be extended beyond the term initially established by the court, or to be increased in amount, or both, the recipient of the rehabilitative alimony shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

Tenn. Code Ann. § 36-5-121(e)(2) (2010). On the other hand, Wife argues that the trial court had not yet closed proof on her ability to be rehabilitated, and therefore did not abuse its discretion by awarding her alimony *in futuro*.

Wife relies on this Court's decision in *Walton v. Walton*, No. W2004-02474-COA-R3-CV, 2005 WL 1922565 (Tenn. Ct. App. Aug. 10, 2005), to support her argument. In *Walton*, the trial court entered a final order awarding wife rehabilitative alimony which was to be evaluated and reviewed after a period of eighteen months based on medical proof at that time. *Id.* at *2. After the eighteen month period, the trial court reviewed the medical proof, found that wife could not be rehabilitated, and awarded her alimony *in futuro*. *Id.* at *3-4. The husband argued the trial court erred because wife was required to show a substantial and material change of circumstances before she could be awarded alimony *in futuro*. *Id.* at *4. We affirmed the trial court's decision, finding that the trial court's final order was not final as to the alimony award, because the trial court had not closed proof on whether wife could be rehabilitated. *Id.* at *7.

In the case at bar, the trial court relied on *Walton* to find that it retained jurisdiction over the nature and amount of the alimony award pending the results of the vocational rehabilitation evaluation. The trial court's amended final order states that "[i]f, after the evaluation, Wife is determined by the Tennessee Department of Vocational Rehabilitation to be unemployable, the Court will conduct a further hearing on the appropriate nature and amount of this support at that time." Similar to the trial court in *Walton*, after the hearing on May 13, 2010, the trial court reviewed the results of the vocational rehabilitation evaluation, determined Wife could not be rehabilitated, and awarded Wife alimony *in futuro*. Because we conclude the trial court's decision to amend the final order pursuant to Rule 60.01 was not an abuse of discretion, we agree that the trial court retained jurisdiction to hear further proof on Wife's ability to be rehabilitated and determine the nature and amount of alimony at that time. Thus, like our decision in *Walton*, we find that Wife was not required to show a substantial and material change of circumstances in order to receive an award of alimony *in futuro*.

Given that the trial court retained jurisdiction over the alimony award, we must next determine whether the trial court abused its discretion by awarding Wife alimony *in futuro*, and by increasing the amount of alimony awarded. Tennessee Code Annotated section 36-5-121 provides courts discretion to award spousal support "according to the nature of the case and the circumstances of the parties." Tenn. Code Ann. § 36-5-121(a) (2010). Although there is a legislative preference for awarding rehabilitative alimony, "when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible," an award of alimony *in futuro* is warranted. Tenn. Code Ann. § 36-5-121(f)(1). In other words, alimony *in futuro* is appropriate when

> the disadvantaged spouse is unable to achieve, with reasonable effort, an
> earning capacity that will permit the spouse's standard of living after the
> divorce to be reasonably comparable to the standard of living enjoyed during

-10-

the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

*Id.* In determining whether to award spousal support and the nature, amount, and duration of such support, courts consider several factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i)(1)-(12). It is well-settled that the two most important factors relating to a trial court's award of alimony are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay. *E.g., Watson v. Watson*, 309 S.W.3d 483, 497-98 (Tenn. Ct. App. 2009) (citation omitted); *Williams v. Williams*, 286 S.W.3d 290, 295-96 (Tenn. Ct. App. 2008) (citations omitted). As noted above, a trial court's evaluation of the relevant factors and decision to award alimony is reviewed for an abuse of discretion. *Gonsewski v. Gonsewski*, M2009-00894-SC-R11CV, 2011 WL 4116654, at *3 (Tenn. Sept.

16, 2011) (citing *Robertson v. Robertson*, 76 S.W.3d 337, 343 (Tenn. 2002)). Therefore, we must affirm the trial court's ruling "'so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).

After considering the vocational rehabilitation evaluations and Wife's testimony regarding her mental and physical illnesses, the trial court determined that Wife could not be rehabilitated. The trial court also found Wife to be economically disadvantaged compared to Husband. Wife did not work during the marriage, and her only income at the time of trial was the alimony she received from Husband. Moreover, Wife's expenses exceeded her income, leaving her with a deficit of almost $700 at the end of each month. Thus, based on Wife's economic disadvantage and inability to be rehabilitated, the trial court found that alimony *in futuro* was appropriate.

Husband argues that his marriage to Wife was one of short duration, and therefore she is not entitled to alimony *in futuro*. Husband correctly states that "our courts have consistently limited the duration or amount of an alimony award where the marriage between the parties was one of short duration, especially when the obligee spouse has contributed little or nothing to the marriage." *Cunningham v. Cunningham*, No. M2002-01659-COA-R3-CV, 2003 WL 22994291, at *10 (Tenn. Ct. App. Dec. 22, 2003) (citing *Crain v. Crain*, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996); *Flanagan v. Flanagan*, 656 S.W.2d 1, 3 (Tenn. Ct. App. 1983)). Husband and Wife married on February 18, 1996, and separated in July 2002. The trial court, however, did not enter its decree divorcing the parties until November 18, 2005, and did not enter its final order until April 17, 2006. Thus, the record clearly establishes that the parties' marriage lasted approximately ten years. Even though the trial court considered the marriage to be one of short duration, it still felt that alimony *in futuro* was necessary under the circumstances.[4] Therefore, we find that the trial court did not abuse its discretion by awarding Wife alimony *in futuro*.

With regard to the amount of alimony *in futuro* awarded, the trial court examined multiple summaries prepared by Wife which demonstrated Husband's ability to pay. The summaries included Husband's state and federal income tax returns and bank account statements from 2006 to 2009. According to Husband's tax returns, Husband received tax refunds for each of the past four years ranging from $12,710 to $16,111. One summary showed Husband's average yearly gross income, average monthly gross income, and average monthly tax refunds. Another summary calculated Husband's average monthly surplus of

---

[4]The trial court expressly stated, "[i]t is a sizeable amount for a short term marriage; it is not enough to make sure that she is comfortable, but it . . . will be taxable and deductible."

funds by adding his refunds to his average monthly bank deposits and subtracting his average monthly expenses. Based on these summaries and Husband's testimony, the trial court found that Husband had a monthly surplus of approximately $4,500. Although Husband argues that these summaries contain gross miscalculations, our review of the record reveals no such error.

Husband further argues that the trial court erred when considering his ability to pay because it failed to take into account the increased expenses he incurs every month from supporting his current spouse and their three children. In response, Wife argues that any obligations Husband voluntarily assumed since the divorce should not be considered to decrease his alimony obligation. "The settled rule in Tennessee is that 'obligations voluntarily assumed are not proper to be considered as changed circumstance[s] to reduce support payments otherwise owed.'" *Lane v. Lane*, No. M2008-02802-COA-R3-CV, 2009 WL 3925461, at *7 n.15 (Tenn. Ct. App. Nov. 17, 2009) (quoting *Richards v. Richards*, No. M2003-02449-COA-R3-CV, 2005 WL 396373, at *9 (Tenn. Ct. App. Feb. 17, 2005) (citing *Dillow v. Dillow*, 575 S.W.2d 289, 291 (Tenn. Ct. App. 1978))). Although this rule usually applies to cases where the trial court modifies its initial alimony award based on a substantial and material change of circumstances, we find that the unique circumstances of the case at bar warrant its application. The trial court's decision to declare the parties divorced and reserve the issue of alimony to be determined at a later date resulted in this unusual factual situation. Considering the equities between the parties, we agree with the trial court's decision not to decrease Husband's alimony obligation by an amount attributable to the support of his new family. "While there is no absolute formula for determining the amount of alimony, 'the real need of the spouse seeking the support is the single most important factor.'" *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Consequently, we find no abuse of discretion in the trial court's decision to increase the amount of Husband's alimony obligation.

### *B. Life Insurance*

Finally, Husband argues that, because the trial court erred by awarding Wife alimony *in futuro*, the trial court also erred by requiring Husband to maintain additional life insurance coverage to secure his alimony *in futuro* obligation. Tennessee Code Annotated section 36-5-121(l) authorizes the trial court to require an obligor spouse to maintain life insurance coverage on his own life, designating the other spouse as beneficiary, in order to secure his alimony obligation. Tenn. Code Ann. § 36-5-121(l). Due to the fact that this award is specifically authorized by statute, it was clearly within the trial court's discretion to award it. Because we find no error in the trial court's decision to award Wife alimony *in futuro*, we find that Husband's argument is without merit. Accordingly, we find no abuse of discretion in the trial court's decision.

-13-

## V.  Conclusion

For the foregoing reasons, we affirm the decision of the trial court.  Costs of this appeal are taxed to the appellant, Kenneth Robert Jackman, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE