# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs April 16, 2013

## CHARLES WADE MCCOY v. ALISHA POINDEXTER MCCOY

**Direct Appeal from the General Sessions Court for McNairy County**
**No. 11-DV-132      Van McMahan, Judge**

_____

**No. W2012-01503-COA-R3-CV - Filed July 22, 2013**

_____

This appeal arises from a divorce action in which the trial court denied Mother's motion to correct a clerical mistake in the permanent parenting plan pursuant to Rule 60.01 of the Tennessee Rules of Civil Procedure. Mother appeals. Vacated and Remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Vacated and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Lisa M. Miller, Selmer, Tennessee, for the appellant, Alisha Poindexter McCoy.

T. L. Wood, Adamsville, Tennessee, for the appellee, Charles Wade McCoy.

## MEMORANDUM OPINION[1]

### Background

In January 2008, Alisha Poindexter McCoy ("Mother") and Charles Wade McCoy ("Father") were married in McNairy County, Tennessee. The parties have two minor

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

children– a daughter born in 2002, and a son born in 2008. In December 2011, the parties separated.

On December 29, 2011, Father filed a complaint for divorce in the McNairy County General Sessions Court. Mother filed an answer and counter-complaint for divorce on February 9, 2012. Thereafter, on February 13, 2012, the parties agreed on the entry of a temporary parenting plan. The temporary parenting plan provided that the parties' son would reside with Father primarily and Mother would have visitation every weekend, while the parties' daughter would reside with Mother "except for the times she chooses to visit [Father]." In total, the temporary parenting plan provided Mother with 200 days with her daughter and 165 days with her son, and provided Father with 200 days with his son and 165 with his daughter. The temporary parenting plan further provided that Father would pay child support to Mother in the amount of $159.00 per month. The following day, on February 14, 2012, Father filed an answer to Mother's counter-complaint.

Subsequently, on May 29, 2012, the parties attended mediation. At the conclusion of the mediation, the parties reached an agreement on all of the issues and were referred to their respective attorneys to prepare the necessary papers, including a permanent parenting plan. The same day, the parties agreed to and executed a marital dissolution agreement and a permanent parenting plan. Thereafter, on May 31, 2012, the trial court entered its final decree of divorce in which it found that irreconcilable differences existed such that both parties were entitled to a divorce, and further incorporated the parties' marital dissolution agreement and permanent parenting plan.

On June 12, 2012, Mother filed a Motion to Correct an Error on the Permanent Parenting Plan. In her motion, Mother alleged, in pertinent part, that:

6.     On or about June 12, 2012, [Mother] noticed an error on the permanent parenting plan.

7.     [Mother] through counsel tried to get the error corrected by agreement on June 12, 2012, but [Father] would not agree.

8.     The parties agreed that the day to day visitation schedule of the temporary permanent parenting plan entered by the court February 13, 2012, would be made a part of the permanent parenting plan.

9.     The visitation in the temporary parenting plan was every weekend as evidenced in the plan itself as well as in the temporary child support worksheet allotting 165 days for visitation for the parent receiving

-2-

visitation.

10. The Permanent Parenting Plan reflected this agreement with the following error not noticed at the time of signing, the box for every other weekend was checked instead of every week.

11. On the permanent parenting plan and the child support worksheet, the number of days of visitation for the parent receiving visitation was 165 days, the same as on the temporary parenting plan.

Wherefore, Premises Considered, [Mother] prays the following:

1. That the court enters [sic] an order changing the permanent parenting plan to correct the typographical error so it reflects the actual agreement of the parties.

On July 17, 2012, after conducting a hearing, the trial court entered an order denying Mother's Motion to Correct an Error on the Permanent Parenting Plan. The trial court's order states, in its entirety, that:

WHEREAS this matter came on for hearing on the 20th day of June, 2012 and the Court having given due consideration to arguments of counsel, the record before the Court, and testimony of each party, determined that the Motion should be dismissed,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, as follows:

[Mother]'s Motion to Correct an Error on the Permanent Parenting Plan is denied.

SO ORDERED this the 17 day of July, 2012.

Thereafter, Mother timely filed a notice of appeal to this Court.

### *Discussion*

The dispositive issue presented by Mother on appeal is whether the trial court erred by failing to correct the alleged clerical mistake in the permanent parenting plan pursuant to

Rule 60.01 of the Tennessee Rules of Civil Procedure.[2] We will not disturb a trial court's decision to grant or deny relief under Rule 60.01 unless the trial court abused its discretion. *Jackman v. Jackman*, 373 S.W.3d 535, 541 (Tenn. Ct. App. 2011) (citing *SecurAmerica Bus. Credit v. Schledwitz*, No. W2009-02571-COA-R3-CV, 2011 WL 3808232, at *8 (Tenn. Ct. App. Aug. 26, 2011)).

> Rule 60.01 of the Tennessee Rules of Civil Procedure provides, in part, that:
>
> Clerical mistakes in judgments, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders.

Tenn. R. Civ. P. 60.01. As this Court recently explained in *Jackman v. Jackman*, 373 S.W.3d 535 (Tenn. Ct. App. 2011):

> "Rule 60.01 is designed to afford relief in cases in which the judgment or order, either standing alone or when viewed in connection with other portions of the record, shows facial errors arising from oversight or omission." *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 49 (Tenn. 1986) (quoting *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976)). Rule 60.01 "is intended to be used to correct errors in a judgment which cause the judgment to fail to reflect the court's ruling accurately," *Addington v. Staggs*, No. 88-214-II, 1989 WL 5453, at *3 (Tenn. Ct. App. Jan. 27, 1989), whether those errors are "inclusions, transpositions, or the leaving out of something the judge intended should go into the order." *Id.* at *2 (citation omitted). In analyzing the trial court's application of Rule 60.01, we are reminded "to strike a proper balance between the competing principles of finality and justice." *Continental Cas. Co.,* 720 S.W.2d at 49 (quoting *Jerkins*, 533 S.W.2d at 280).

*Id.* at 542.

In this case, Mother argues that the permanent parenting plan failed to reflect her

---

[2]On appeal, Mother argues that the trial court erred by failing to correct the alleged clerical mistake in the permanent parenting plan under *either* Rule 60.01, *or* Rule 60.02. We note, however, that Mother failed to provide the trial court with any citation to the Rule under which she sought relief. Upon thorough examination of the record, it is abundantly clear that Mother sought relief pursuant to Rule 60.01. Moreover, we find that Rule 60.02 is not applicable in this case because Mother requested correction of a clerical mistake, as opposed to relief from the trial court's judgment. Accordingly, our analysis is limited to whether the trial court erred by failing to correct the alleged clerical mistake pursuant to Rule 60.01.

understanding of the parties' agreed upon parenting arrangement because it differed from the parenting arrangement in the temporary parenting plan. Specifically, the temporary parenting plan provided the noncustodial parent with parenting time *every weekend*, while the permanent parenting plan provided the noncustodial parent with parenting time *every other weekend*. Although the weekend visitation provisions in the two plans differed, the number of days of parenting time were the same in each plan– Mother received 200 days with her daughter and 165 days with her son; Father received 200 days with his son and 165 days with his daughter. Therefore, the difference in the two plans regarding weekend visitation, according to Mother, was a clerical mistake necessitating correction by the trial court under Rule 60.01.

On the other hand, Father argues that the parenting arrangement in the permanent parenting plan reflects his understanding of the agreement that the parties reached during mediation. Despite Mother's emphasis on the similarity between the number of days of parenting time in each plan, Father stresses that the parties agreed to keep the number of days the same in order to maintain the amount of child support he paid to Mother. Otherwise, if the parties utilized a more accurate day count in the permanent parenting plan, Mother would have received a reduction in the amount of child support she received. Thus, Father argues that this is a clear example of parties making compromises during mediation with the advice of counsel in an effort to reach an agreement.

Because no transcript was available in this case, our review is limited to the Statement of the Evidence filed by Mother pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure.[3] Mother's Statement of the Evidence provides as follows:

### I. Initial Settlement of the Case

This case was settled at Mediation on May 29, 2012. Instead of a memorandum of understanding being prepared, the Marital Dissolution Agreement and the Permanent Parenting Plan was [sic] prepared at the mediation for the parties to sign. The final decree was not prepared at the mediation.

---

[3]We note that Mother's Statement of the Evidence is not in the record. Attached to Mother's brief, however, is a copy of her Statement of the Evidence stamp filed by the trial court clerk on September 5, 2012. The Statement of the Case in Mother's brief states that she filed a Statement of the Evidence and that Father filed no objections. Moreover, the Statement of the Case in Father's brief agrees that Mother's Statement of the Case is accurate, with certain exceptions not germane to this issue. Therefore, we have considered the Statement of the Evidence attached to Mother's brief.

[Mother] agreed to incorporate the custody and visitation arrangement of the temporary parenting plan ordered in this case. [Mother] did review the Permanent Parenting Plan at mediation and did sign it. She was under the assumption that the Plan incorporated the temporary plan and that that was what she was signing and agreeing to.

However, once the final decree was prepared and the Judge signed off on all the documents to finalize the divorce, she realized that there was a mistake in the parenting plan.

A motion to correct the error on the permanent parenting plan was filed with the General Sessions Court on June 12, 2012, and a hearing was conducted on June 20, 2012.

## II. Evidence Presented at Hearing

The hearing took place on June 20, 2012, at 2:00 p.m., in the General Sessions Court of McNairy County, Tennessee. Judge Van McMahan presided over the matter. The parties provided brief opening statements, and the Court instructed the Defendant to call her first witness.

### A. [Mother]'s Proof

### i. Ms. Alisha Poindexter McCoy

The first witness called by [Mother's attorney] was [Mother]. On direct examination, [Mother] testified that she did attend mediation in an attempt to settle the case. She thought the case was settled. She cited to the court her understanding of the parenting plan was that the visitation schedule would be the same as the visitation schedule agreed to in the Temporary parenting plan and that had been followed by the parties since February 2, 2012 until May 29, 2012.

The temporary parenting plan provided that she would have custody of the daughter with the father having visitation when the child choose [sic] to visit the father. The temporary parenting plan provided that [Father] would have custody of the son and that the mother would have every Friday from [sic] to Monday visitation. Child Support was set within the guidelines based upon the parties' statement of their income.

At mediation, [Mother] agreed for that visitation schedule to remain in place with child support to be recalculated within the guidelines based upon the verification of the parties' income using their income tax documents.

During mediation, the permanent parenting plan was drafted by the mediator for the parties to sign instead of a memorandum of understanding being drawn up and signed and the paper work prepared by the attorneys after the fact. After reviewing the plan, [Mother] testified that she thought the papers said every week as she had agreed upon but when she got a signed copy from the Judge realized that the papers said every other week. She testified that at first the papers presented to her had other people's names so that it was clear that a previous form was being used and just changes made.

She also stated that because the marital dissolution agreement and the permanent parenting plan were drafted at the mediation and therefore took longer, she felt pressured in signing.

[Mother] testified that the number of days on the temporary and the permanent parenting plan were the same indicating her agreement of every weekend visitation. She further stated in response to counsel's questions that she absolutely would not have signed the plan if she thought it had stated every other weekend visitation because what she agreed to was every weekend visitation.

On cross examination, [Mother] was repetitively asked about her compliance with the marital dissolution agreement which was objected to as relevance by her attorney, but overruled by the court. She stated she still had one of the vehicles in her possession that was awarded to [Father], but that she had made that month's payment. She was also asked if she and [Father] had followed the summer visitation schedule and upon her answer of no was asked by [Father]'s attorney why she had not gotten the child as stated in the parenting plan for summer. Her response was that her and [Father] had reached another agreement and was following that agreement.

[Mother] was also asked about driving by [Father]'s home which again was objected to as to relevance by [Mother]'s attorney, but was overruled. [Mother] answered by saying she was checking on her children because [Father] had refused to tell her where the child was and was [sic] watching the child.

## B. [Father]'s Proof

### i. Mr. Charles Wade McCoy

The first witness called by [Father's attorney] was [Father]. On direct examination, [Father] testified that he had attended mediation and that the resulting parenting pan [sic] was what he agreed to. He stated that the reason the number of days on the parenting plan were the same as the temporary parenting plan, was for child support purposes only. He stated that the reason for the temporary parenting plan being every weekend visitation was because of his employment. He stated that he worked every weekend at that time. [Father] stated that the reason the permanent parenting plan allowed for every other weekend visitation was because his work schedule would be changing.

[Father] testified that [Mother] was constantly driving by his house. He testified that the summer visitation schedule was not being followed because [Mother] did not come get the child. He testified that they did not have another agreement in place other than what was written in the permanent parenting plan.

[Father] testified that he had not gotten a vehicle he was awarded to [sic] in the marital dissolution agreement. He testified that he was paying the child support as ordered in the parenting plan.

Upon cross examination of [Father] by [Mother's attorney], [Father] admitted that his work schedule had not changed yet but he was up for a different job at work. [Father] admitted that the number of days in the temporary parenting plan and the number of days in the permanent parenting plan were the same. He further admitted that the temporary parenting plan was every weekend visitation and that the permanent parenting plan allowed only for every other weekend visitation.

## III. Closing Arguments

Both parties gave brief closing statements. [Mother] argued that what she signed was not what she agreed to. She stated that she did not realize the mistake until the first weekend after that Judge had signed the final papers. She stated that the Permanent Parenting Plan reduced to writing was not what [she] agreed to. She thought the permanent parenting plan she signed had the same visitation schedule as the temporary parenting plan. [Father] argued that he

did not think the permanent parenting plan contained a mistake. He stated that the every other weekend visitation is what he agreed to that it was not a mutual mistake.

After closing arguments, the court dismissed [Mother]'s motion to correct an error on the permanent parenting plan.

It is undisputed that an obvious conflict exists in the permanent parenting plan between the number of days of parenting time and the amount of child support ordered. Rather than resolve the discrepancy, the trial court denied Mother's motion. We believe it was error on the part of the trial court to allow this obvious discrepancy to go unresolved. As a result, we vacate the judgment of the trial court and remand this matter for further proceedings.

## *Conclusion*

For the foregoing reasons, we vacate the judgment of the trial court and remand for further proceedings consistent with this Opinion. Costs of this appeal are taxed to the Appellee, Charles Wade McCoy, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE