IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 15, 2023 Session

## JENNIFER LYNN MORGAN ESPOSITO v. JOSEPH DIEGO ESPOSITO

Appeal from the Chancery Court for Campbell County
No. 2021-CV-22          Elizabeth C. Asbury, Chancellor

_____

No. E2022-01784-COA-R3-CV
_____

In this divorce action, the trial court entered an order in December 2021, according to the parties' announced agreement, granting the parties a divorce on stipulated grounds and directing, *inter alia*, that the marital residence would be sold at auction and that any "marital personal property" upon which the parties could not reach an agreement prior to the auction would be "sold by the court when the [marital residence was] auctioned." The court also memorialized the parties' agreement that each would keep the vehicles in his or her possession and be responsible for debts incurred in each of their respective names. In an order entered in April 2022, the court confirmed that the marital residence had been sold at auction to the husband. Following a bench trial, the court found that, with the exception of two personal items belonging to the wife, the marital residence and "the contents located at the property" were all marital property; that the proceeds from "marital property located at the home" were included in the auction sale proceeds; and that the proceeds from the auction should be divided equally between the parties. The wife has appealed. Upon careful consideration, we affirm the trial court's findings that the marital personal property located at the marital residence had been sold with the marital residence and that the auction sale price reflected the total valuation of both the residence and personal property sold. We also affirm the trial court's adoption of the parties' agreement regarding vehicles and debts. However, we vacate the trial court's classification of the marital residence as marital property and the court's overall distribution of marital property. We remand for (1) further findings of fact and conclusions of law regarding classification of the marital residence and, if necessary, identification of any increase in value of the marital residence that resulted from the husband's significant contributions during the marriage; (2) a limited evidentiary hearing to identify, classify, and value the parties' bank accounts; and (3) reconsideration of the marital property distribution inclusive of the findings on remand and pursuant to the statutory factors provided in Tennessee Code Annotated § 36-4-121(c) (2021).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Ben H. Houston, II, Knoxville, Tennessee, for the appellant, Jennifer Lynn Morgan Esposito.

Henry Daniel Forrester, III, Clinton, Tennessee, for the appellee, Joseph Diego Esposito.

**OPINION**

I.  Factual and Procedural Background

The plaintiff, Jennifer Lynn Morgan Esposito ("Wife"), filed a complaint for divorce against the defendant, Joseph Diego Esposito ("Husband"), on January 26, 2021, in the Campbell County Chancery Court ("trial court"). The parties had been married in June 2012, and no children had been born to the marriage. Wife alleged the statutory ground of inappropriate marital conduct or, in the alternative, irreconcilable differences. At the time of the complaint's filing, Wife was fifty-five years of age, and Husband was sixty-four. Wife alleged that Husband had exhibited "outrageous and harassing conduct" and requested that Husband voluntarily vacate the marital residence, stating that if he did not, she would "be forced" to seek his removal.

Concerning the parties' financial arrangements, Wife averred in her complaint:

Throughout the marriage of the parties the parties have scrupulously kept their finances separate with respect to which as far as [Wife] is aware, there is no marital debt nor marital asset. The parties have resided in the home which was owned by [Wife] prior to the marriage of the parties and which is financed solely in her name, and [Husband] has made a few payments on the said dwelling over the years. Each party otherwise is possessed of their own separate personal property and separate debts.

The home to which Wife referred consisted of improved real property located on Hiwassee Drive in Jacksboro, Tennessee ("the Marital Residence") and was titled solely in Wife's name.

Husband filed an answer and counter-complaint on February 12, 2021, admitting that the parties had developed irreconcilable differences but denying all substantive allegations against him. In his counter-complaint, Husband alleged the statutory ground of irreconcilable differences or, in the alternative, inappropriate marital conduct.

Husband did not specify any allegations against Wife, and, apart from generally denying her description of their financial arrangements, did not aver specific financial details. On June 30, 2021, Husband filed a lien *lis pendens* regarding the Marital Residence in an amount not to exceed one-half of its current market value.

Wife filed a petition for a no-contact order of protection against Husband on July 28, 2021, alleging that he had sexually assaulted her and "threatened to burn down the house." On September 8, 2021, Husband filed an *ex parte* motion for exclusive possession of the Marital Residence and entry of a restraining order against Wife. Husband averred that the parties had appeared before the trial court for a hearing on Wife's petition for an order of protection and had "entered into an Agreed Order" on August 25, 2021. According to Husband, the agreement had granted him possession of the Marital Residence on weekdays and Wife possession on weekends provided that she gave Husband forty-eight hours' notice of her arrival. Husband alleged that he had arrived home on Labor Day weekend to find Wife in the Marital Residence without notice and that she had threatened him with a firearm, ultimately resulting in her arrest. Husband requested exclusive possession of the Marital Residence and a restraining order preventing Wife from coming onto the premises.

Wife filed an answer to Husband's motion for exclusive possession, acknowledging the existence of the agreed order but denying that the order required her to give notice of weekend occupancy.[1] Wife concomitantly filed a motion requesting that the court order the Marital Residence sold "by auction immediately" and direct Husband to vacate the property.

Following a hearing conducted on November 17, 2021, the trial court entered an order on December 13, 2021, approving a partial agreement announced by the parties, which stipulated, *inter alia*, that the Marital Residence would be sold at auction with the proceeds to be paid into the trial court's registry. Pursuant to the agreement, the court granted the parties a divorce on stipulated grounds and appointed Special Master Dennis Potter to conduct the sale of the Marital Residence. *See* Tenn. Code Ann. § 36-4-121(a)(3) (Supp. 2023) (providing that a trial court has authority to order an auction sale of property when equitably distributing a marital estate). The court also ordered that Wife's maiden surname of "Morgan" be restored to her, that each party keep the vehicle in his or her possession, that each party be responsible for debt incurred in his or her name, and that the parties have no contact with one another. Noting that Husband had current possession of the Marital Residence, the court allowed him forty-five days to vacate the property. The parties agreed to a date, December 4, 2021, when Wife could "retrieve her personal items and family heirlooms" from the Marital Residence. They

---

[1] The August 2021 agreed order is not in the appellate record.

further agreed: "Parties['] marital personal property may be divided by agreement; however if no agreement is reached same will be sold by the court when the property is auctioned." The parties "reserve[ed] the right to further address the financial investment in the marital property to the court" and agreed that each would submit financial information concerning his or her investment in the Marital Residence and any "claim to more than fifty (50%) percent of the property sale proceeds."

On December 20, 2021, attorney Joseph G. Coker filed an "Attorney's Report on Title" regarding the Marital Residence. The record contains an advertisement for a court-ordered online auction of the Marital Residence through Ayers Auction & Real Estate Company. Although this advertisement was not admitted as an exhibit in the subsequent bench trial, it is in the appellate record and appears to have been an attachment to Mr. Coker's filing. On February 4, 2022, Husband filed a document entitled, "Defendant's Financial Information Relative to His Investment in the Marital Property." Husband claimed to have individually invested a total of $265,604.53 in the Marital Residence, and he attached copies of some checks made out to Wife and many receipts for home materials and repairs.

On February 9, 2022, the special master filed a "Report of Sale" with the trial court, attaching and incorporating a "Contract for Sale of Real Estate" proffered by Ayers Auction and Real Estate Company. According to the special master's report, the Marital Residence was sold on January 27, 2022, to Husband as "the last, highest and best bidder for the sum of $362,500.00 plus a 10% bidder premium in the amount of $36,250.00 for a total bid of $398,750.00." The special master stated in part:

> [I]n obedience to a Court Ordered Sale of real property at public auction rendered in this cause, and after due advertising, Ayers Auction and Real Estate Company, at the time and place fixed in their advertisement, to sell at public auction, on the terms specified in said Order, the real <u>and personal property therein mentioned</u>, described and ordered to be sold.

(Emphasis added.) The underlined phrase above was the only mention of personal property in the special master's report, and neither the report nor the real estate contract itemized the price of any piece of personal property. The special master also noted that "[t]he bid remained open for the required ten days raise period with no additional bid being submitted." He detailed sales expenses totaling $47,292.18, which included property taxes, Mr. Coker's fee, the special master's fee, and the auction company's advertising and commission.

The trial court entered its "Final Judgment of Divorce Only" on February 22, 2022, confirming the court's prior grant to the parties of a divorce on stipulated grounds.

The court "reserved for future determination" "all other matters relating to the divorce itself and relating to property issues, debt issues, alimony issues, and other financial matters relating to the parties."

On April 11, 2022, the trial court entered an "Order Confirming Sale of Property," confirming and approving the special master's report of the sale of "real property" and finding that "a commercially reasonable and fair price was obtained." The court authorized the special master "to distribute the remainder of the proceeds to the parties herein, after payment of fees and expense, set out herein, after a proper distribution is determined by this court." The court did not mention personal property in the order confirming the sale.

The trial court conducted a bench trial on September 13, 2022, concerning issues of property classification and distribution. No transcript of this proceeding is in the record, but following a subsequent hearing upon Wife's statement of the evidence and Husband's objections to her statement, the trial court entered an approved statement of the evidence pursuant to Tennessee Rule of Appellate Procedure 24. According to this statement, the parties and the special master were the only witnesses to testify during the bench trial. The primary points of dispute between the parties' respective testimonies were (1) whether the Marital Residence should be classified as marital or separate property and (2) whether the personal property remaining at the Marital Residence had been properly sold and accounted for in the sale of the Marital Residence.

In a "Final Order Distributing Property," entered on November 23, 2022, the trial court concluded that (1) Husband had contributed significantly to the purchase and mortgage payoff of the Marital Residence and had otherwise contributed to the home's value such that the Marital Residence was marital property and (2) any marital personal property remaining in the home at the time of the auction had been properly sold pursuant to the court's prior order and without a timely objection from Wife. Noting that the Clerk and Master Registry had $351,403.46 "from the sale of the residence and contents," the trial court awarded "an equitable portion of $175,701.73," or fifty percent, to each party. The court directed Husband to "make diligent search" for two Christmas items that Wife had indicated were at the Marital Residence and were Wife's personal property. The court also ordered each party to be responsible for his or her own debts and attorney's fees. Wife timely appealed.

## II. Issues Presented

Wife presents four issues on appeal, which we have reordered and restated slightly as follows:

1. Whether the trial court erred by classifying all proceeds from the sale of the Marital Residence as marital property.

2. Whether the trial court erred by failing to classify and divide at least $67,175.00 worth of personal property based on its conclusion that the personal property had been sold with the Marital Residence.

3. Whether the trial court erred by failing to identify, classify, and assign reasonable values to all of the parties' assets prior to making an equitable division of the assets.

4. Whether the trial court erred by failing to properly consider the factors set forth in Tennessee Code Annotated § 36-4-121(c) when fashioning its equitable distribution of marital property.

## III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has explained the applicable standard of appellate review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). *See Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

The classification of property as either separate or marital is a question of fact "to be determined in light of all relevant circumstances." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009). The valuation of a marital asset is also a question of fact. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998).

## IV. Classification of Marital Residence

Wife contends that the trial court erred by classifying the entire amount of the proceeds from the sale of the Marital Residence as marital property. In particular, Wife argues that because the Marital Residence was titled in her name, the court should have found that $40,000.00 paid toward the down payment on the Marital Residence by Husband was repayment of a loan or, in the alternative, a gift to her from Husband prior to their marriage. Husband contends that the trial court properly found the Marital Residence to be marital property based on the doctrine of transmutation. However, the record contains no mention of transmutation, and the trial court did not mention the doctrine in its final order. Because we cannot discern by what theory the trial court found the Marital Residence to be marital property, we conclude that we must vacate the court's finding and remand for further findings of fact and conclusions of law concerning classification of the Marital Residence.

Regarding classification of property pursuant to a divorce, this Court has previously elucidated:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an *equitable* division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted).

The version of Tennessee Code Annotated § 36-4-121(b)(1) (2021) in effect when the instant complaint was filed provided the following in relevant part:[2]

>    (A)    "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . .
>
>    (B)(i) "Marital property" includes income from, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation;
>
>    * * *
>
>    (D)    As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine[.]

In contrast, Tennessee Code Annotated § 36-4-121(b)(2)(A) (2021) defined separate property in pertinent part as "[a]ll real and personal property owned by a spouse before marriage . . . ."  Additionally, as noted by Wife, Tennessee Code Annotated § 36-4-121(b)(2)(D) (2021) provided that "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent" was separate property.

---

[2] Effective March 31, 2022, the General Assembly has amended Tennessee Code Annotated § 36-4-121(b) to, *inter alia*, add definitions of marital debt and separate debt within the definitions of marital property and separate property.  *See* 2022 Tenn. Pub. Acts, Ch. 762, § 4 (S.B. 2385).  Due to these additions, the numbering of the definitions quoted above has been amended to §§ 36-4-121(b)(2)(A), (B), and (D) for the relevant subsections of the marital property definition and § 36-4-121(b)(4)(A) and (D) for the relevant subsections of the separate property definition.  The quoted passages have not substantively changed.

Our Supreme Court has explained the "related doctrines" of transmutation and commingling as follows:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Snodgrass*, 295 S.W.3d at 256 (quoting *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002)).

As this Court has delineated:

> Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property. Accordingly, our court has classified separately owned real property as marital property when the parties agreed that it should be owned jointly even though the title was never changed, or when the spouse owning the separate property conceded that he or she intended that the separate property would be converted to marital property.

*Hayes v. Hayes*, No. W2010-02015-COA-R3-CV, 2012 WL 4936282, at *12 (Tenn. Ct. App. Oct. 18, 2012) (quoting *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *5 (Tenn. Ct. App. Sept. 1, 2006)).

The trial court made the following findings of fact when classifying the Marital Residence:

As for the real property and home, the Court does find that the property listed above, and the contents located at the property, is all marital property, and subject to an equitable distribution.

The Court does find that the property was purchased and deeded solely into the Wife's name on March 31, 2008.

That [Wife] and [Husband] had [begun] dating approximately three to four years prior to the purchase of the home (approximately 2004 or 2005).

The parties were engaged to each other at the time of purchase, and moved into the home together shortly after purchase.

The parties subsequently married one another on June 11, 2012.

The Husband provided $62,000.00 for the down payment of the purchase of the home in March 2008. There was discrepancy between the parties on the amount provided. The Wife testified that only $50,000.00 was used at the time for closing, but does not dispute that the money came from the Husband. She testified that this was a loan from the Husband, but does not have any documentation to verify the same. The Husband testified that this was not a loan.

It was also presented to the Court that the Husband further provided another $60,000.00 to help pay off the mortgage on the home in 2018 that came from his Pension account. This was testified to by both parties.

Further, the parties provided conflicting testimony as to the mortgage payments from the date of purchase until the payoff of the home. The Wife testified she was solely responsible for the mortgage until approximately 2015, the Husband testified they always alternated mortgage payments but that he provided cash to the Wife for the payment. Neither party was able to produce banking records or documentation from prior to 2015 due to the age of the records.

The Wife testified as well that she felt that the Husband had made substantial contributions to the residence. Both parties testified that substantial improvements had also been made to the home during the marriage. However, there was conflict as to who paid for the materials.

- 10 -

The testimony indicated both parties had worked and contributed to improvements on the home during the marriage.

In support of upholding the trial court's classification on appeal, Husband maintains that "the Trial Court correctly concluded that the [Marital Residence] was transmuted into marital property." Wife maintains that "by referencing the Husband's substantial contributions to the [Marital Residence], the Trial Court appeared to be relying on Tenn. Code Ann. § 36-4-121(b)(2)(B)(i)." She thereby asserts that "while the Trial Court arguably had the discretion to determine that the increase in equity in the home that occurred during the marriage was marital property," the trial court "exceeded its authority under the statute by determining that the equity that already existed in the home at the time of the marriage was marital property."

It is undisputed that the Marital Residence was titled in Wife's name from the time of its purchase in March 2008 through the time of trial, that the parties began residing together in the Marital Residence shortly after the property was purchased, and that their marriage did not take place until June 2012. By considering the down payment funds provided by Husband and the parties' engaged status at the time of the home's purchase, the trial court appears to have employed a transmutation analysis without ever identifying the doctrine of transmutation. On the other hand, the trial court also considered whether each party had substantially contributed to the Marital Residence's preservation and appreciation without directly referring to the statutory definition of marital property then codified at Tennessee Code Annotated § 36-4-121(b)(1)(B)(i) (2021).

In *Lewis v. Lewis*, No. W2019-00542-COA-R3-CV, 2020 WL 4668091, at *3 (Tenn. Ct. App. Aug. 11, 2020), this Court found that the parties had "created confusion in the trial court by asserting claims and defenses based on the doctrine of transmutation and the statutory definition of marital property under Tenn. Code Ann. § 36-4-121(b)(1)(B)(i) without distinguishing them." Noting that the doctrine of transmutation and the statutory definition of marital property "are distinct in their purpose and requirements," this Court explained:

> "Common-law" transmutation is "founded upon principles of acquisition by gift [and] transforms the separate asset into a marital asset in its entirety," *Galligan v. Galligan*, No. M2006-00833-COA-R3-CV, 2007 WL 2295999, at *6 n.5 (Tenn. Ct. App. Aug. 10, 2007), while Tenn. Code Ann. § 36-4-121(b)(1)(B)(i) classifies only the "increase in the value" of a separate asset during the marriage as marital property "if each party substantially contributed to its preservation and appreciation." Stated another way, under the common-law doctrine of transmutation, **"[a]n asset separately owned by one spouse will be classified as marital property if**

**the parties themselves treated it as marital property**." *Trezevant v. Trezevant*, 568 S.W.3d 595, 610 (Tenn. Ct. App. 2018) (emphasis added) (quoting *Fox* [*v. Fox*], [No. M2004-02616-COA-R3-CV,] 2006 WL 2535407, at *5 [(Tenn. Ct. App. Sept. 1, 2006)]). By contrast, under the statutory definition of marital property, **the increase in value** during the marriage of a separate asset will be classified as marital property if **the nonowner spouse contributed substantially** to the asset's preservation and appreciation. Tenn. Code Ann. § 36-4-121(b)(1)(B)(i). Thus, under the doctrine of transmutation, **the entire asset** may become marital property when the parties **treated it as marital property,** while under the statutory definition, **only the increase in value resulting from the nonowner's substantial contributions** becomes marital property.

*Lewis*, 2020 WL 4668091, at *3. In *Lewis*, this Court limited its analysis to the doctrine of transmutation upon finding that the husband was "not entitled to relief pursuant to Tenn. Code Ann. § 36-4-121" because he "failed to prove that the Property increased in value due to his contributions" and because the husband had "not raise[d] the issue of whether he was entitled to relief pursuant to Tenn. Code Ann. § 36-4-121." *Id.*, at n.1.

In the instant action, no mention is made of transmutation in Husband's pleadings before the trial court, the statement of the evidence, or the trial court's order distributing property. However, the trial court's findings regarding the engaged status of the parties when Husband provided down payment funds for the Marital Residence's purchase would seem to indicate a transmutation analysis. *See, e.g.*, *McCoy v. McCoy*, No. E2012-02698-COA-R3-CV, 2013 WL 5925900, at *5 (Tenn. Ct. App. Nov. 4, 2013) (affirming a finding of transmutation while considering that although the husband had purchased the marital residence "prior to the marriage and titled [it] in his name alone," "the parties selected the house together while they were engaged for the purpose of living in it together once they were married"); *Gorbet v. Gorbet*, No. W2011-01879-COA-R3-CV, 2012 WL 4847090, at *11 (Tenn. Ct. App. Oct. 11, 2012) (affirming a finding of transmutation while considering that although the marital residence "began as separate property [when] it was purchased by [the husband] prior to the marriage and [was] titled in his name only," the parties "selected the house together, while they were engaged to be married, for the purpose of living in it together").

Wife asserts that Husband has waived his argument concerning the doctrine of transmutation on appeal because he did not raise it before the trial court. We are not convinced that Husband waived transmutation as a theory. First, when a court is faced with an argument that separately titled property is actually marital property, the doctrines of transmutation and commingling are implied. *See Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) ("In addition to the provisions of Tenn. Code Ann. § 36-4-

121(b)(1)(b), courts in Tennessee have recognized two methods by which separate property may be converted into marital property: commingling and transmutation."). Second, given that we have not been provided with a trial transcript on appeal, we find the statement of the evidence inconclusive as to whether the parties may have argued and tried transmutation by implied consent.[3] *See* Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

If the trial court intended to find that the Marital Residence had transmuted from Wife's separate property to marital property, the result would be that the entire value of the Marital Residence would be marital property. *See Lewis*, 2020 WL 4668091, at *3. However, if the trial court did not intend to find that transmutation had occurred, it was error to find that the entire asset was marital property because "only the increase in value resulting from the nonowner's [Husband's] substantial contributions" would be marital property. *See id.* We therefore determine that this case must be remanded for the trial court to explain its findings of fact and conclusions of law more fully regarding the classification of the Marital Residence. *See* Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.").

If, on remand, the trial court finds that only the increase in value of the Marital Residence resulting from Husband's substantial contributions is marital property, the amount of this increase in value must also be identified. Although it is undisputed that Husband made substantial contributions to the value of the Marital Residence, neither party has attempted on appeal to isolate the amount of increased value resulting from his contributions. Wife purchased the Marital Residence for $240,000.00, and it sold at auction, together with any personal property sold with it, for $362,500.00. Apart from the issue of valuation of the personal property sold at auction, which would have to be subtracted from the value of the Marital Residence, the trial court would need to identify the amount of the increase in value due to Husband's substantial contributions.

Neither of Wife's arguments concerning Husband's down payment on the Marital Residence serves to identify the amount of any increase in value of the Marital Residence resulting from Husband's significant contributions during the marriage. Rather than identifying increased value, Wife posits that "[a]t a bare minimum," $40,000.00 that Husband provided for the down payment should be classified as her separate property because it represented repayment of a loan she had made to Husband.[4] In the alternative,

---

[3] Wife was represented by different counsel in the trial court than on appeal.

[4] The trial court found that Husband had "provided $62,000.00 for the down payment of the purchase of the home in March 2008," and Husband presented evidence of a wire transfer in this amount. However,

Wife asserts that the down payment was a gift to her from Husband. Finding that Wife had failed to present any documentation of a loan, the trial court credited Husband's testimony that the down payment did not constitute repayment of a loan. Wife did not testify that the down payment was a gift. On appeal, Wife simply argues that because Husband allowed the Marital Residence to be titled solely in her name, the down payment he provided, if not repayment of a loan, was a gift to her.

For further consideration on remand, we note that the trial court and the parties have referred to Husband's and Wife's respective financial contributions to the Marital Residence as though all contributions made by each party were made from his or her separate property. Indeed, the parties do appear to have maintained separate bank accounts. Wife presented multiple bank statements and credit card statements, dated from 2015 to the time of trial, indicating that she maintained separate accounts in her name only, and Husband presented copies of some checks written to Wife from a separate bank account in his name only. However, although the parties have consistently referred to amounts paid by Husband or amounts paid by Wife, and Wife averred in her complaint that they had "scrupulously kept their finances separate," the record is unclear as to whether the funds in each party's separate bank account or in any retirement accounts remained separate property throughout the marriage.

Notably, funds earned by either spouse during the marriage are marital property, *see* Tenn. Code Ann. § 36-4-121(b)(1)(A) (2021), and neither party disputes the trial court's finding that both parties were employed at the time of trial. *See Lewis*, 2020 WL 4668091, at *4 ("[A] spouse's earnings are marital property, regardless of whether they are deposited into a joint or separate bank account."). If, during the marriage, the parties each deposited their respective earnings into their respective separate bank accounts, these funds earned during the marriage were nonetheless marital property under the statute. *See id.* Additionally, it is undisputed that the approximately $60,000.00 provided by Husband at the time of the mortgage payoff, at least $51,000.00 of which undisputedly went toward the payoff, was from his pension account. However, the record provides no information regarding whether Husband earned any portion of the funds in that pension account during the marriage. *See* Tenn. Code Ann. § 36-4-121(b)(1)(B)(ii) (2021) ("'Marital property' includes the value of vested and unvested pension benefits, vested

the court noted in its order that Wife had testified to the amount of the down payment as $50,000.00. The statement of the evidence approved by the trial court stated that Wife testified to the amount paid at the time of closing as $40,000.00. No explanation appears in the record or in the parties' appellate briefs for the $10,000.00 discrepancy between the statement of the evidence and the trial court's summary of Wife's testimony in its order. On appeal, Wife consistently refers to the down payment amount as "at least $40,000.00."

and unvested stock option rights, retirement, and other fringe benefits accrued as a result of employment during the marriage.").

With the above considerations in mind, classification of the Marital Residence as separate or marital property is remanded to the trial court for additional findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52.01. On remand, the court should particularly address whether it reached its conclusion pursuant to the doctrine of transmutation or the statutory definitions of marital and separate property provided in Tennessee Code Annotated § 36-4-121. If the former, the entire value of the Marital Residence is marital property. *See Lewis*, 2020 WL 4668091, at *3. If the latter, the court should identify only any increase in value of the Marital Residence that resulted from Husband's significant contributions during the marriage as marital property. *See id.*

## V. Classification and Valuation of Other Assets and Debts

Apart from classification of the Marital Residence, Wife raises two issues regarding the classification and valuation of other assets and debts: one concerning personal property that the trial court found was sold at auction with the Marital Residence and one more generally concerning the parties' other assets and debts. As to the auction sale, Wife contends that the trial court erred by finding that the parties' personal property was sold in conjunction with the auction of the Marital Residence. She thereby argues that the court erred by failing to classify individual items of personal property as separate or marital and by failing to assign each item a value. As to other assets, Wife contends that the trial court erred by failing to classify and assign values to the parties' bank accounts, vehicles, and debts. Husband counters that the trial court properly incorporated the parties' announced stipulations, as memorialized in the court's December 2021 order, when classifying the parties' assets and debts apart from the Marital Residence. Husband also posits that via the auction sale, the trial court properly valued the personal property sold with the Marital Residence through the purchase price obtained at auction. Upon thorough review of the record, we determine that with the exception of the parties' bank accounts, the trial court did not err in its classification and valuation of the parties' personal property and debts. However, although the record clearly indicates that the parties possessed bank accounts, the record is devoid of any stipulations or findings specific to those accounts. We therefore determine that the bank accounts must be identified, classified, and valued by the trial court on remand to facilitate an equitable distribution of the marital estate.

In its final order distributing property, the trial court referred to the stipulations announced by the parties during the November 2021 hearing and memorialized in the

court's December 2021 order.[5]  This Court has previously explained the following regarding stipulations in a divorce case as compared to a marital dissolution agreement:

Tennessee public policy favors allowing divorcing parties to resolve their disputes by agreement. *Long v. McAllister-Long*, 221 S.W.3d 1, 8 (Tenn. Ct. App. 2006). As a result, many divorcing parties resolve disputed issues by entering into a marital dissolution agreement. *Id.* To the extent that the obligations in a marital dissolution agreement retain their contractual character, they are binding on the parties like all other contracts once they are approved by the court. *Id.* at 8-9. Similarly, divorcing parties stipulate to facts that fall within the range of possibly true facts or to valid legal strategies. *See Hyneman v. Hyneman*, 152 S.W.3d 549, 555 (Tenn. Ct. App. 2003). A stipulation is "an agreement between counsel regarding business before the court which is entered into mutually and voluntarily by the parties." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 701 (Tenn. Ct. App. 1999). While narrower in scope than a marital dissolution agreement, a valid stipulation is binding on the parties and will be "rigidly enforced" by the courts like any other agreement. *See Mast Adver. & Publ'g, Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993). In determining whether a stipulation is valid, courts should consider (1) whether the parties had competent representation of counsel, (2) whether extensive and detailed negotiations occurred, (3) whether the parties agreed to the stipulation in open court, and (4) whether the parties acknowledge their understanding the terms and that the terms are fair and equitable when questioned by the judge. *Hyneman*, 152 S.W.3d at 555.

*Watts v. Watts*, No. W2016-01189-COA-R3-CV, 2017 WL 2954685, at *6 (Tenn. Ct. App. July 11, 2017). Once divorcing parties have reached a valid agreement on property issues and that agreement has been approved by the trial court, any issues to be decided by the trial court narrow to those still in dispute. *See* Tenn. Code Ann. § 36-4-121(g)(1) (Supp. 2023) ("Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties regarding the division of property."); *see, e.g.*, *Selitsch v. Selitsch*, 492 S.W.3d 677 (Tenn. Ct. App. 2015) (explaining that following approval of a proposed final decree that the parties' counsel had submitted jointly upon an announced, negotiated agreement and multiple

---

[5] In its final order, the trial court specifically referred to its February 2022 order granting the parties' a divorce on stipulated grounds following the November 2021 hearing. The court stated that "[a]s part of that order, the parties agreed to sell the real property, home, and contents . . . ." This stipulation regarding the sale of the Marital Residence and the other stipulations announced during the November 2021 hearing that were not related to grounds for divorce were actually memorialized in a separate order entered by the trial court on December 13, 2021.

- 16 -

revisions, the issue at hand was narrowed to a post-judgment motion concerning military retirement benefits); *Dailey v. Dailey*, No. E2019-00928-COA-R3-CV, 2020 WL 3967843 (Tenn. Ct. App. July 13, 2020) (stating that after the parties had "agreed on a distribution of a majority of the marital property," "a hearing was necessary concerning missing gold and silver that had been purchased during the marriage").

In its December 2021 order, the trial court stated that the parties had announced a "partial agreement on issues" and memorialized the agreement as follows:

1.  [Wife] and [Husband] are awarded a divorce from each other upon stipulated grounds, restoring them to the rights and privileges of unmarried persons.

2.  [Wife's] . . . maiden name of "Morgan" [shall] be restored.

3.  Parties['] marital property located at . . . Hiwassee Drive, Jacksboro, Tennessee 37757 be sold by the court under its existing rules and the proceeds be paid into the registry of the court pending further orders of the court.

4.  Dennis Potter be appointed as Special Master to conduct said sale.

5.  [Husband] is in possession of the marital property and shall be allowed forty-five (45) days to vacate the property from November 17, 2021.

6.  [Husband] shall be responsible for all bills and costs associated with the residence until he relocates.

7.  [Husband] shall not turn off the utilities and any costs associated with the residence, after he relocates, shall be paid from the sale proceeds.

8.  Parties will agree to a date when [Wife] may go to the residence, with another person, and retrieve her personal items and family heirlooms; [Husband] may have a representative present; but the parties will not be in the residence at the same time. [Wife] shall retrieve her items on December 4, 2021 between 8:00 AM and 12:00 noon.

9. <u>Parties['] marital personal property may be divided by agreement; however if no agreement is reached same will be sold by the court when the property is auctioned.</u>

10. Each party shall keep the vehicles in their respective possession.

11. Each party, by and through their attorney shall submit their financial information, relative to their investment in the purchase of the residence to the other parties' attorney; that each attorney shall submit to the court a summary, with relevant exhibits, of their client['s] claim to more than fifty (50%) percent of the property sale proceeds.

12. Each party reserves the right to further address the financial investment in the marital property to the court.

13. Each party reserves the right to address any issue not herein resolved, as may be appropriate.

14. Each party shall pay indebtedness in their respective names.

15. Neither party is entitled to COBRA benefits from the other.

16. The parties shall have no contact with each other, except through their attorney[s].

(Emphasis added.)

In its final order distributing property, the trial court made the following findings regarding the sale of the marital property during the auction:

The Wife also testified at trial about concerns that the auction did not adequately represent her interests in the marital property located at the home that was also sold at auction per prior court order and asked the Court for a further offset of funds from the Clerk and Master Registry.

The prior Order entered by this Court stated that any marital property not divided or awarded by agreement would be sold at auction.

Further, the Wife never filed an objection prior to the auction, any motions, or any requests with the Court regarding any property located at the marital home.

The Wife also did not file an objection within ten (10) days after entry of the order confirming the sale of the home and contents.

There was also no testimony put forward before the Court to show that the marital property at the residence was not adequately advertised, or allowed to be shown [to] potential buyers prior to the auction.

The Clerk and Master testified at trial that all locks on the residence were removed and complete access was allowed through the home and the garage for anyone interested in viewing the home and contents prior to the auction.

As such, this Court finds that by prior order, the marital property located at the home was sold as part of the auction, and is included with the proceeds deposited in the Clerk and Master Registry.

The Court does order that [Husband] is to make diligent search for two personal items indicated by [Wife] to still be at the residence. Both of which were Christmas items, one described as an angel, and another as a Christmas figurine. If the items are found by [Husband], arrangements are to be made to have those items returned to [Wife] immediately.[6]

The Court finds that the Clerk and Master Registry currently has $351,403.46 from the sale of the residence and contents as stated above. Each party shall be awarded an equitable portion of $175,701.73 each.

(Paragraph numbering omitted.) We will address each of Wife's issues concerning the classification and valuation of assets and debts in turn.

A. Personal Property Sold with Marital Residence

Wife argues that the trial court erred by adopting the auction sale price as inclusive of the personal property that had been located at the Marital Residence because she maintains that the personal property was not sold in the auction. In support of her

---

[6] Regarding the Christmas items, the trial court's order distributing property actually states: "If the items are found by the Defendant, arrangements are to be made to have those items returned to the Defendant immediately." The second use of "Defendant" in this sentence appears to be a typographical error.

argument, Wife points to a lack of reference to personal property in the "Special Master's Report of Sale," the trial court's order confirming the sale, the contract for sale with Ayers Auction and Real Estate Company ("Ayers Contract"), and a brochure advertising the sale.

As Husband notes, the opening paragraph of the special master's report stated:

> The undersigned respectfully reports that, in obedience to a Court Ordered Sale of real property at public auction rendered in this cause, and after due advertising, Ayers Auction and Real Estate Company, at the time and place fixed in their advertisement, to sell at public auction, on the terms specified in said Order, the real <u>and personal property therein mentioned,</u> described and ordered to be sold.

(Emphasis added.)

In her reply brief, Wife acknowledges that the special master's report referred to personal property, but she posits that the lack of reference to specific items, particularly items of "significant value," "makes it clear that all of the parties' personal property left at the [Marital Residence] was not sold with the residence at the auction held on January 27, 2022." During the September 2022 trial, Wife presented an exhibit entitled, "Value of Home Assets," consisting of a list of items that Wife claimed were at the Marital Residence prior to the auction along with Wife's valuation of each item. Among the items of higher value listed by Wife and noted specifically by her on appeal were a Sea Ray boat ($10,000.00), a riding mower ($2,500.00), and "[m]ultiple weapons" ($5,000.00). Wife's valuation of the personal property at the Marital Residence totaled $67,175.00. The trial court's "Order Confirming Sale of Property" referenced the special master's report and approved the sale as "commercially reasonable and fair" without expressly mentioning any personal property sold with the Marital Residence.

A copy of the Ayers Contract was attached to and incorporated into the special master's report of sale. It consisted of one page with the heading, "Contract for Sale of Real Estate." It indicated the buyer as Husband, the seller as the special master, and the "real estate" sold as the address of the Marital Residence. A total purchase price of $362,500.00 was reflected on the Ayers Contract plus a ten percent "bidder premium" to be paid by Husband as the buyer. Although the Ayers Contract did not mention personal property, the contract was in the record as a part of the special master's report, which stated that the personal property had been sold with the Marital Residence.

Wife also refers to an auction brochure advertising the sale, which was attached to the "Attorney's Report on Title" filed with the trial court in December 2021. The

- 20 -

statement of the evidence indicated that "[a]t some point during the trial of this matter the Chancellor reviewed the color advertisement flyer from Ayers Auction and Realty." On appeal, Husband asserts that this brochure should not be considered because it was not admitted as evidence at trial. However, because the brochure was reviewed by the trial court and was is in the appellate record certified by the trial court, we determine that we may review it. *See State v. Bobadilla*, 181 S.W.3d 641, 644 (Tenn. 2005); *but see Layman v. Vanguard Contractors, Inc.*, 183 S.W.3d 310, 316 n.5 (Tenn. 2006) ("explaining that although "a trial court's reliance upon a document contained in the technical record may be sufficient to place the record into evidence," "[t]he better practice . . . is to mark the document as a trial exhibit."). Regarding personal property, the brochure stated: "Furniture to be sold from the house: 5 pc. log bedroom suite, desk w/chair, desk w/ chair (2 sets), and 48" tv."

In its final order distributing property, the trial court addressed Wife's testimony "about concerns that the auction did not adequately represent her interests in the marital property located at the home that was also sold at auction per prior court order." The statement of the evidence summarized Wife's pertinent testimony as follows:

> The Wife also testified that she went to retrieve her personal items and family heirlooms on December 4, 2021 . . . . She testified that while the doors to the house were open, the garage doors were locked and chained and she couldn't locate certain items of value including three lawn mowers in the home. A list of items entitled *Value of Home Items* that included the Wife's position as to the fair market value of various items of personal property acquired during the marriage that were left in the [Marital Residence] was admitted into evidence as Exhibit #4 during the Wife's testimony. The value of these items of personal property acquired during the marriage totaled $67,175 according to the document prepared by the Wife that was admitted into evidence as Exhibit #4.

> The Wife testified that while she had picked up some of her personal items from the residence, no agreement was reached regarding the division of personal property between her and her husband. Wife further testified that it was her understanding that if there was no agreement as to division of marital property that said property would be auctioned off with the home. The Wife testified that she asked for a five piece log bedroom suite, and a 48 inch television be removed from the auction. She did not ask for two desk with chair sets be removed and those were auctioned off with the property.

> * * *

[Wife] testified that she had already taken her items of value out of the home.

(Paragraph numbering omitted.)  According to the statement of the evidence, Husband "testified that the remaining personal property of the parties was located at the residence at the time of auction" including "the boat, lawnmower, and other items."  The special master "testified that he did not remember what personal property remained in the home at the time of the auction."

Importantly, Wife acknowledged during her trial testimony her "understanding that if there was no agreement as to division of marital property that said property would be auctioned off with the home."  She further acknowledged that "she had already taken her items of value out of the home."  Considering the factors set forth in *Watts* concerning the validity of stipulations, we determine that at the time the parties entered into the agreement memorialized in the December 2021 order, (1) both parties were represented by competent counsel; (2) Wife presented no evidence indicating that she had been denied the opportunity to negotiate, although the record is unclear as to the amount or duration of negotiations prior to the announced agreement; (3) the parties announced their partial agreement in open court, and (4) the parties acknowledged their understanding of the agreement terms during the September 2022 trial.  *See Watts*, 2017 WL 2954685, at *6.

We emphasize that Wife has not provided this Court with a transcript of the November 2021 hearing during which the parties' partial agreement was announced.  As this Court has previously clarified, "it is the appellant's responsibility to provide this Court with a sufficient appellate record with which this Court can conduct a proper review of the trial court proceedings."  *Dishon v. Dishon*, No. M2017-01378-COA-R3-CV, 2018 WL 3493159, at *9 (Tenn. Ct. App. July 20, 2018).  Moreover, in the absence of a sufficient record, "we usually assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings."  *Id.* (quoting *Tarpley v. Hornyak*, 174 S.W.3d 736, 740 (Tenn. Ct. App. 2004)).

In its final order, the trial court found that "by prior order, the marital property located at the home was sold as part of the auction, and is included with the proceeds deposited in the Clerk and Master Registry."  We do not find that either the one-page Ayers Contract or the Ayers brochure was designed to be an authoritative list of the items that were located at the Marital Residence at the time of the auction.[7]  The special

---

[7] Wife also posits that because "real property being sold is not transferred to the new owner of real estate as part of a real estate transaction," personal property could not have been sold with the Marital Residence at auction due to lack of mention of it in the Ayers Contract.  In support of this postulate, she relies on

master's report indicated that the parties' personal property had been sold as ordered in the trial court's December 2021 order, and the trial court referenced the special master's report in its subsequent order confirming the sale. On appeal, Wife posits that the parties' agreement did not necessarily mean that their personal property would be sold in the same auction as the Marital Residence. However, we discern no error in the trial court's reiteration in its final order of the parties' previously stipulated agreement "to sell the real property, home, and contents located at [the Marital Residence]" and to sell "any marital property that had not been awarded to either party by agreement . . . with the above real property by auction through the Clerk and Master" (emphasis added). *See, e.g., Barnes v. Barnes*, No. M2012-02085-COA-R3-CV, 2014 WL 1413931, at *15 (Tenn. Ct. App. Apr. 10, 2014) ("We decline the invitation to interpret the trial court's orders any differently than the trial judge has done [her]self, especially given the fact that we have no transcript from the relevant hearings.").

Considering the parties' announced and approved agreement, together with the trial court's findings in its final order distributing property and the testimony summarized in the statement of the evidence, we conclude that the evidence preponderates in favor of the trial court's finding that the marital property remaining with the Marital Residence had been sold in the auction. The evidence also preponderates in favor of the trial court's finding that Wife had the opportunity to retrieve any items of personal property the parties had agreed were hers prior to the auction. Therefore, we find no error in the trial court's classification of the personal property located at the Marital Residence. The trial court did note the exception of the two Christmas items that Wife testified were at the Marital Residence, and the court directed Husband to "make diligent search" for those as Wife's separate property. Furthermore, inasmuch as the trial court determined that the auction sale was commercially reasonable, we discern no error in the trial court's implied valuation of the Marital Residence and marital property located at the residence as the purchase price obtained of $362,500.00.[8]

## B. Classification and Valuation of Bank Accounts, Vehicles, and Debts

---

this Court's decision in *Keenan v. Foder*, No. M2011-01475-COA-R3, 2012 WL 3090303, at *5-6 (Tenn. Ct. App. July 30, 2012). The issue in *Keenan* was "whether the disputed gate [was] a fixture to the land," meaning whether it had "become part of the land to which it [was] attached" and had thus been sold with the land. *Keenan*, 2012 WL 3090303, at *6. We find *Keenan* to be inapplicable to the instant action inasmuch as no one is asserting that the parties' items of personal property had become fixtures to the Marital Residence. The one-page Ayers Contract is simply not dispositive of this issue in light of the trial court's orders.

[8] Neither party has raised an issue concerning the amount of the funds available, $351,403.46, determined by the trial court to be held in the Clerk and Master's Registry.

Wife also asserts that the trial court "erred by failing to identify, classify, and assign reasonable values to all of the parties' assets prior to making an equitable division of the same." Apart from her argument regarding the personal property located at the Marital Residence, Wife's argument concerning this issue specifically addresses the parties' bank accounts, vehicles, and debts. In the December 2021 order, the trial court memorialized the parties' agreement to each "keep the vehicles in their respective possession" and to each "pay indebtedness in their respective names." Wife is correct in stating that there is no further information in the record identifying or valuing specific vehicles or debts. However, because the trial court approved and memorialized the parties' announced agreement as to the vehicles and debts prior to trial and because the statement of the evidence indicates that neither vehicles nor debts were an issue at trial, we find no reason to disturb the trial court's incorporation of the parties' agreement as to these items in its final order distributing property. *See* Tenn. Code Ann. § 36-4-121(g)(1).

In contrast, the trial court's silence concerning the parties' bank accounts is problematic. In the context of presenting evidence regarding their respective financial contributions to the Marital Residence, the parties presented exhibits at trial indicating that Husband and Wife each possessed at least one individually titled bank account. No information was presented, however, as to bank account balances at the time of trial or the possible existence of additional accounts. Moreover, as explained in a previous section of this Opinion, the record is unclear concerning whether any portion of funds in the individual bank accounts may have been earned during the marriage and would therefore be considered marital property. *See* Tenn. Code Ann. § 36-4-121(b)(1)(A) (2021) ("'Marital property' means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . ."); *Lewis*, 2020 WL 4668091, at *4 ("[A] spouse's earnings are marital property, regardless of whether they are deposited into a joint or separate bank account."). The trial court did find in its final order that both parties were employed at the time of trial, and we must assume that each party deposited at least a portion of his or her income earned during the marriage in some type of account.

The parties' partial agreement, memorialized in the December 2021 order, did not address bank accounts. Moreover, the trial court made no findings identifying, classifying, valuing, or distributing the parties' bank accounts in its order distributing property. *See* Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."). This being the case, we determine that Wife's issue concerning proper identification, classification, and valuation of the parties' bank accounts has merit. We therefore conclude that a remand is also necessary so that

- 24 -

the trial court can receive evidence needed to identify, classify, and value the parties' bank accounts with the values determined as nearly as possible to the November 23, 2022 date of the final judgment's entry.[9]

## VI. Equitable Distribution of Marital Property

Wife posits that the trial court erred by distributing the marital estate without conducting a proper analysis of the factors provided in Tennessee Code Annotated § 36-4-121(c). Reiterating her classification and valuation arguments while also asserting that this nearly ten-year marriage was of short duration, Wife argues that she should have been awarded a greater percentage of the marital estate to return her more closely to the financial situation she was in prior to the marriage.[10] While acknowledging that the trial court did not expressly reference the statutory factors in its final order distributing property, Husband maintains that an analysis of the relevant factors based on the evidence presented at trial supports the trial court's distribution of the marital estate. Having determined that this case must be remanded for the trial court to enter further findings of fact and conclusions of law regarding the Marital Residence and the parties' bank accounts, we further determine that we must vacate the trial court's division of the

---

[9] As noted previously, although it is undisputed that Husband provided funds for the mortgage payoff on the Marital Residence from a pension account, the record provides no information regarding whether Husband earned any portion of the funds in that pension account during the marriage. *See* Tenn. Code Ann. § 36-4-121(b)(1)(B)(ii) (2021). The record contains no further information regarding this retirement account or any other retirement account that may have been titled in either party's name. Inasmuch as the record is devoid of evidence concerning retirement accounts and neither party has raised an issue regarding retirement accounts on appeal, we deem any issue regarding identification, classification, valuation, or distribution of retirement accounts to be waived. *See Strategic Acquisitions Grp., LLC v. Premier Parking of Tenn., LLC*, No. E2019-01631-COA-R3-CV, 2020 WL 2595869, at *4 n.1 (Tenn. Ct. App. May 22, 2020) ("[A]rguments not raised in the trial court cannot be raised for the first time on appeal.").

[10] Wife correctly notes that in *Jackman v. Jackman*, 373 S.W.3d 535, 546 (Tenn. Ct. App. 2011), this Court determined that the trial court had not abused its discretion by finding that the parties' marriage, which "lasted approximately ten years," inclusive of nearly four years between the parties' separation and entry of the final decree, was of "short duration." This determination in *Jackman* was in the context of an alimony analysis wherein the trial court had considered statutory alimony factors and awarded what it considered to be a "'sizeable amount for a short term marriage.'" *Id.* at n.4. We recognize, however, that whether a marriage was of relatively short duration requires a factual analysis unique to each situation and is one of many factors to be considered in distributing the marital estate. *See* Tenn. Code Ann. § 36-4-121(c); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988) (determining the parties' seven-year marriage to be of short duration and holding that "[i]n cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place.").

proceeds from the auction sale and remand for the trial court to consider its findings on remand and the relevant statutory factors in dividing the marital estate.

The version of Tennessee Code Annotated § 36-4-121(c) (2021) in effect when the instant complaint was filed provided that "[i]n making equitable division of marital property, the court shall consider all relevant factors," including the following:[11]

(1)      The duration of the marriage;

(2)      The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3)      The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4)      The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose

---

[11] Effective March 31, 2022, the General Assembly has amended Tennessee Code Annotated § 36-4-121(c) to add the following factor as subdivision -121(c)(13):

The total amount of attorney fees and expenses paid by each party in connection with the proceedings; whether the attorney fees and expenses were paid from marital property, separate property, or funds borrowed by a party; and the reasonableness, under the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct, and necessity of the attorney fees and expenses paid by each party[.]

See 2022 Tenn. Pub. Acts, Ch. 762, § 6 (S.B. 2385). Because the complaint in this case was filed prior to the effective date of the amendment, the added subdivision is not applicable here. See, e.g., In re Braxton M., 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;

(6)     The value of the separate property of each party;

(7)     The estate of each party at the time of the marriage;

(8)     The economic circumstances of each party at the time the division of property is to become effective;

(9)     The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10)    In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11)    The amount of social security benefits available to each spouse; and

(12)    Such other factors as are necessary to consider the equities between the parties.

This Court has previously recognized the "mandatory nature of the language" in the statute, which provides that the trial court "'shall' [distribute marital property] 'based on the factors set forth in subsection (c).'" *See Hill v. Hill*, No. E2021-00399-COA-R3-CV, 2023 WL 3675829, at *12 (Tenn. Ct. App. May 26, 2023) (quoting Tenn. Code Ann. § 36-4-121(c)). *See also Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994) ("Trial courts have wide latitude in fashioning an equitable division of marital property. Their decisions must be guided by the factors in Tenn. Code Ann. § 36-4-121(c).") (internal citation omitted); *Swafford v. Swafford*, No. E2017-00095-COA-R3-CV, 2018 WL 1410900, at *2 (Tenn. Ct. App. Mar. 21, 2018) ("Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property[.]") (quoting *McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3 (Tenn. Ct. App. Apr. 16, 2010)).

In its final order, the trial court did not undertake an analysis of the statutory factors when distributing the marital estate. Although the court did make some findings of fact that corresponded to certain of the statutory factors, such as the court's findings that "both parties [were] able bodied, employed and not in need of alimony," the court's order does not demonstrate a properly reasoned analysis of the applicable factors in this case. We note particularly that although the court memorialized the parties' agreement that personal property remaining at the Marital Residence was marital and would be sold with the residence, it is undisputed that the parties did not agree on how the resulting proceeds of the auction sale would be equitably divided between them. The court simply determined that each party would be awarded "an equitable portion of $175,701.73," or approximately half of the sale proceeds.

We therefore determine that the trial court's distribution of the marital estate must be vacated and remanded with instructions for the trial court to "'make specific findings of fact and conclusions of law in accordance with Tennessee Code Annotated § 36-4-121(c) and Tennessee Rule of Civil Procedure 52.01.'" *See Hill*, 2023 WL 3675829, at *15 (quoting *Leonard v. Leonard*, No. W2018-02235-COA-R3-CV, 2020 WL 1515951, at *3 (Tenn. Ct. App. Mar. 30, 2020)). As instructed previously in this Opinion, the trial court's findings on remand should include reconsideration and explanation of the theory on which classification of the Marital Residence is based. Additionally, the court's findings should include the identification, classification, and valuation of the parties' bank accounts as nearly as possible to entry of the final order on November 23, 2022.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's findings that the marital personal property located at the Marital Residence had been sold with the Marital Residence and that the auction sale price reflected the total valuation of both the residence and personal property sold. We also affirm the trial court's adoption of the parties' agreement regarding vehicles and debts. However, we vacate, for insufficient findings of fact and conclusions of law, the trial court's classification of the Marital Residence as marital property and the court's overall distribution of marital property. We remand this case to the trial court for (1) further findings of fact and conclusions of law regarding classification of the Marital Residence, and if necessary, identification of any increase in value of the Marital Residence that resulted from Husband's significant contributions during the marriage; (2) a limited evidentiary hearing to identify, classify, and value the parties' bank accounts as nearly as possible to entry of the final order on November 23, 2022; (3) reconsideration of the marital property distribution inclusive of the findings on remand and pursuant to the statutory factors provided in Tennessee Code Annotated § 36-4-121(c) (2021); and (4) collection of costs below. Costs on appeal are

taxed one-half to the appellant, Jennifer Lynn Morgan Esposito, and one-half to the appellee, Joseph Diego Esposito.


s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE